## CIRCUIT COURT FOR THE
## TENTH CIRCUIT COURT OF APPEALS

| | |
|---|---|
| GARFIELD COUNTY, UTAH, *et al.*,<br><br>　　*Plaintiff-Appellants*,<br><br>　　　v.<br><br>JOSEPH R. BIDEN, JR., in his official capacity as President of the United States, *et al.*<br><br>　　*Defendant-Appellees*,<br><br><br>HOPI TRIBE, *et al.*,<br><br>　　*Defendant-Intervenor-Appellees*, | Case Nos. 23-4106; 23-4107<br><br><br>**MOTION OF GRAND STAIRCASE ESCALANTE PARTNERS, SOCIETY OF VERTEBRATE PALEONTOLOGY, AND CONSERVATION LANDS FOUNDATION TO INTERVENE AS DEFENDANT-APPELLEES** |

## <u>CORPORATE DISCLOSURE STATEMENT</u>

Pursuant to Federal Rule of Appellate Procedure 26.1(a), GRAND

STAIRCASE ESCALANTE PARTNERS, SOCIETY OF VERTEBRATE

PALEONTOLOGY, AND CONSERVATION LANDS FOUNDATION,

through their undersigned counsel, hereby disclose that they have no parent

corporations, nor does any publicly held corporation own 10% or more of their

stock.

September 18, 2023                     Respectfully submitted,

<u>/s/ *Raymond Scott Berry*</u>
Raymond Scott Berry
P.O. Box 9491
Salt Lake City, UT 84109
801-556-8515
rsberryslc@gmail.com

ii

Pursuant to Rule 27 of the Federal Rules of Appellate Procedure, Proposed Intervenors Grand Staircase Escalante Partners, the Society of Vertebrate Paleontology, and Conservation Lands Foundation, through their undersigned counsel, respectfully submit this Motion to Intervene as Defendant-Appellees.  Undersigned counsel have conferred with counsel for the existing parties.  Plaintiff-Appellants oppose.  The Federal Defendant-Appellees partially oppose the Motion to the extent Proposed Intervenors seek to intervene as of right.  The Tribal Nations Intervenor-Appellees do not oppose.  The SUWA Intervenor-Appellees do not oppose.

## Relief Sought and Grounds for Motion

Grand Staircase-Escalante Partners ("GSEP" or "Partners"), the Society of Vertebrate Paleontology ("SVP"), and Conservation Lands Foundation ("CLF," together, "Proposed Intervenors") seek to intervene in the above-captioned case on appeal.  Proposed Intervenors satisfy the requirements for intervention as of right set forth in Rule 24(a) of the Federal Rules of Civil Procedure, which this Court applies to motions to intervene on appeal.  *See Elliot Indus. Ltd. P'ship v. BP Am. Prod. Co.*, 407 F.3d 1091, 1102 (10th Cir. 2005).  Intervention as of right is appropriate because Proposed Intervenors have a substantial interest in the subject of this appeal, granting appellants' requested relief would impair that interest, existing parties do not adequately represent Proposed Intervenors' interests, and this

1

motion is timely.  In the alternative, permissive intervention is appropriate because Proposed Intervenors have claims that share a common question of law or fact with this action.

## Introduction

This appeal follows the dismissal of two cases, one brought by the State of Utah and two Utah counties, and the other by four individual plaintiffs. Both cases sought to invalidate President Biden's October 8, 2021 Proclamations[1] designating new boundaries for the Grand Staircase-Escalante National Monument ("Grand Staircase") and Bears Ears National Monument ("Bears Ears") (collectively the "Monuments"), as necessary for the proper care and management of the Monuments' geological, archaeological, cultural, historical, biological, and paleontological resources.

Proposed Intervenors are three organizations whose founding purposes are to protect and preserve the sensitive resources contained within Grand Staircase, and, in the case of GSEP and CLF, to protect the existence of Grand Staircase itself.  GSEP literally bears the Monument's name and has no organizational purpose besides its protection.  SVP and its members were among the original advocates for the creation of Grand Staircase.  They have

---

[1] Proclamation 10286 of Oct. 8, 2021, Grand Staircase-Escalante Nat'l Monument, 86 Fed. Reg. 57335 (Oct. 8, 2021); Proclamation 10285 of Oct. 8, 2021, Bears Ears Nat'l Monument, 86 Fed. Reg. 57321 (Oct. 8, 2021).

conducted, and continue to conduct, extensive paleontological field work within Grand Staircase, as it is one of North America's finest and richest sources of unique and valuable paleontological resources. SVP and its members also advocated for the creation of, and conduct extensive paleontological field work within, Bears Ears. In short, Proposed Intervenors' members work, conduct scientific research, recreate, and find aesthetic and spiritual fulfillment throughout Grand Staircase and Bears Ears.

In addition to their profound interests in and knowledge of the Monuments' geological, paleontological, and natural resources, Proposed Intervenors have been litigating issues relating to the Antiquities Act and Grand Staircase since 2017, when President Trump purported to reduce the Monument to less than half its previous size.

Appellants seek a legal ruling that would invalidate Grand Staircase and Bears Ears, an outcome that would be catastrophic to Proposed Intervenors. Before the District Court, and in all likelihood again on appeal, Appellants articulate a strikingly narrow theory of the Antiquities Act. If the Tenth Circuit were to endorse these theories, it would be virtually impossible for Proposed Intervenors to protect their interests at a later stage in the proceeding. Intervention directly to this Court is the proper, and indeed only available, procedural avenue.

Proposed Intervenors moved to intervene before the District Court early in the case.  ECF 31.  Magistrate Judge Kohler denied the motion on the basis that a group of entities that filed their intervention motion one day before Proposed Intervenors, led by the Southern Utah Wilderness Alliance ("SUWA"), were "existing parties" that adequately represented Proposed Intervenors' interests — even though the District Court had yet to admit them as intervenors at the time of Proposed Intervenors' filing.  ECF 122.  Proposed Intervenors promptly objected to that decision.  ECF 146.  In response, the District Court observed that Proposed Intervenors have "unique, detailed, helpful factual knowledge," ECF 176 at 4, but stayed resolution of Proposed Intervenors' objection until "the ruling on the motions to dismiss has been entered."  ECF No. 176 at 4.  The Court's decision dismissing Plaintiff-Appellants' cases likewise observed that Proposed Intervenors' "motion[] to intervene await[s] final decision, pending entry of this order."  ECF No. 180 at 5.

Ultimately, the Court entered a judgment dismissing Plaintiffs' causes of action with prejudice without ever addressing the pending intervention motion, and Plaintiffs filed notices of appeal shortly thereafter.  Under well-established law, the District Court now lacks jurisdiction to grant Intervenors party status unless and until the action is remanded.  *See Lancaster v. Indep. Sch. Dist. No. 5*, 149 F.3d 1228, 1237 (10th Cir. 1998)

4

(providing that a notice of appeal strips the district court of jurisdiction over the case, save for "collateral matters not involved in the appeal," such as attorney's fees).  But Proposed Intervenors cannot protect their profound interest in the Monuments by waiting for such an eventuality.

Because Proposed Intervenors have vital interests in this litigation that are not adequately represented by the existing parties, the Court should grant this Motion to Intervene.

## Legal Standard

Federal Rule of Civil Procedure 24 governs intervention in federal district court.  Although there is no analogue in appellate procedure, the Tenth Circuit has recognized that the "policies underlying intervention" apply in federal appellate courts.  *Elliott Indus. Ltd. P'ship v. BP Am. Prod. Co.*, 407 F.3d 1091, 1102 (10th Cir. 2005); *see also UAW Local 238 v. Scofield*, 382 U.S. 205, 217, n.10 (1965).  Under Rule 24(a), a court "must permit" a party to intervene as of right where:  (i) the motion is timely; (ii) the party "claims an interest relating to the property or transaction that is the subject of the action"; (iii) resolution of the lawsuit may "as a practical matter impair or impede the movant's ability to protect its interest"; and (iv) the party's interests are not "adequately represent[ed]" by the existing parties. Fed. R. Civ. P. 24(a)(2).

5

"The Tenth Circuit generally follows a liberal view in allowing intervention under Rule 24(a)."[2] *Elliott Indus.*, 407 F.3d at 1103. Pursuant to this standard, the Tenth Circuit has repeatedly permitted movants to intervene on appeal. *See id.* at 1102 (permitting an individual to intervene on appeal for the limited purpose of challenging the District Court's subject matter jurisdiction, where the Court found that the issue of the lower court's subject matter jurisdiction was "essential to [its] review" and that its "inquiry [was] aided by the presence of an interested party like [the movant]"); *Duplan v. Harper*, 188 F.3d 1195, 1203 (10th Cir. 1999) (permitting individual to intervene on appeal to address issues raised for the first time on appeal); *New Mexico v. Trujillo*, 813 F.3d 1308, 1315-16 (10th Cir. 2016) (referencing the Tenth Circuit's decision earlier in the case to permit a series of Pueblo tribes to intervene directly on appeal to address arguments raised appeal).

Proposed Intervenors should be permitted to intervene so long as they satisfy the standards contained in Rule 24(a), and, under Tenth Circuit precedent, they plainly do.

---

[2] However, when the intervening party did not seek intervention in the underlying district court proceedings, "intervention on appeal will be permitted 'only in an exceptional case for imperative reasons.'" *Elliott Indus.*, 407 F.3d at . at 1103 (citation omitted). Given Proposed Intervenors' extensive efforts to intervene in the proceedings below, as described above, this heightened "imperative reasons" standard does not apply here.

## Argument

### I.    Proposed Intervenors are Entitled to Intervene as of Right

A.    <u>Proposed Intervenors' Motion is Timely</u>

"The timeliness of a motion to intervene is assessed in light of all the circumstances, including the length of time since the applicant knew of his interest in the case, prejudice to the existing parties, prejudice to the applicant, and the existence of any unusual circumstances." *Elliott Indus.*, 407 F.3d at 1103.  This requirement "is not a tool of retribution to punish the tardy would-be intervenor, but rather a guard against prejudicing the original parties by the failure to apply sooner." *Utah Ass'n of Cntys. v. Clinton*, 255 F.3d 1246, 1250 (10th Cir. 2001).  Further, a motion to intervene is timely if the motion is filed when "the case is far from ready for final disposition." *Id.* at 1250–51.  These appellate proceedings have only just begun — Appellants filed their notices of appeal barely more than a month ago, and Appellants' opening briefs are not due until the end of October.  In addition, no existing party would be prejudiced by Proposed Intervenors' entry into the case.  Under these circumstances, Proposed Intervenors' motion is timely.

B.    Proposed Intervenors Have Substantial Protected Interests at Stake

Rule 24(a)(2) requires an applicant for intervention to possess an interest relating to the property or transaction that is the subject matter of the litigation. Fed. R. Civ. P. 24(a)(2). This requirement is not rigid. Rather, "[t]he 'interest' test is primarily . . . a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process." *Wal-Mart Stores, Inc. v. Tex. Alcoholic Beverage Comm'n*, 834 F.3d 562, 566 n.2 (5th Cir. 2016) (quoting *Nuesse v. Camp*, 385 F.2d 694, 700 (D.C. Cir. 1967)). An interest is sufficient for purposes of Rule 24 if it is "legally protectable" — that is, "if it is of the type that the law deems worthy of protection, even if the intervenor does not have an enforceable legal entitlement or would not have standing to pursue her own claim." *Id.* at 566 (quoting *Texas v. United States*, 805 F.3d 653, 659 (5th Cir. 2015)); *see also Diamond v. Charles*, 476 U.S. 54, 75 (1986).

Proposed Intervenors have legally protectable interests in the issues at stake in this litigation. All three have brought still-pending litigation concerning President Trump's Proclamation 9682,[3] which purported to reduce the size of Grand Staircase by nearly 50%. *See* Compl. for Declaratory &

---

[3] Proclamation 9862 of Dec. 4, 2017, Modifying the Grand Staircase-Escalante Nat'l Monument, 82 Fed. Reg. 58089 (Dec. 4, 2017).

Injunctive Relief, *Grand Staircase Escalante Partners et al. v. Trump* (D.D.C. 2017), No. 1:17-cv-02591.  Proposed Intervenors challenged that Proclamation, alleging that it violated the Antiquities Act and the Constitution.  For the past five-and-a-half years, they have, through that litigation, sought to restore the Grand Staircase boundaries established by President Clinton in 1996 and adjusted and affirmed by Congress in subsequent legislation.  And long before President Trump issued his 2017 proclamation purporting to remove critical protections for Monument objects, Proposed Intervenors worked to preserve and protect those objects.

GSEP, which was established in 2004 as the official "friends" organization of the Monument under a cooperative agreement with the Bureau of Land Management ("BLM"), provides extensive educational and supportive programming and on-the-ground resource management and protection activities related to Grand Staircase.  For example, GSEP has assisted BLM by:  administering the largest riparian ecosystem restoration project within Grand Staircase, pursuant to which it removed invasive Russian olive trees growing along a 100-mile riparian corridor of the Escalante River within the original Monument boundaries;[4] developing an extensive science and monitoring plan for the Monument; and supporting the

---

[4] This was and remains one of the largest backcountry restoration projects in the country.

restoration of damaged historic, scientific, and cultural sites. *See* GSEP Mot. to Intervene & Mem. in Supp., Ex. 1 ¶¶ 4–6, 10 (Decl. of Sarah Bauman) *Garfield Cnty. et al., v. United States*, 22-cv-00059-DN-PK (D. Utah Nov. 11, 2022) ECF No. 31-1 (*hereinafter* "Bauman Decl."); *see also* GSEP Mot. to Intervene & Mem. in Supp., Ex. 2 ¶¶ 4–6 (Decl. of John Holland) *Garfield Cnty. et al., v. United States*, 22-cv-00059-DN-PK (D. Utah Nov. 11, 2022) ECF No. 31-2 (*hereinafter* "Holland Decl.")  In 2021, Partners' staff, volunteers, and hosted workers contributed nearly 21,000 hours to supporting and restoring Grand Staircase's precious resources and educating the public about the Monument. Bauman Decl. at ¶ 15–19.  Finally, GSEP's Executive Director and a member of GSEP's Board of Directors serve as members on BLM's official Monument Advisory Committee.

Partners has received support in its efforts from CLF, a national non-profit committed to promoting conservation on BLM-administered lands throughout the United States, which includes both Grand Staircase and Bears Ears. *See* GSEP Mot. to Intervene & Mem. in Supp., Ex. 3 ¶ 6 (Decl. of Danielle Murray) *Garfield Cnty. et al., v. United States*, 22-cv-00059-DN-PK (D. Utah Nov. 11, 2022) ECF No. 31-3 (*hereinafter* "Murray Decl.")  CLF assists the National Landscape Conservation System in working to protect Grand Staircase, the largest and among the best known units of the National Conservation Lands. *Id*. at ¶¶ 7–8.  CLF has joined with Partners to assist in

the protection of Monument objects, *Id.* at ¶¶ 8–14, including through multi-year organizational capacity building training as well as tailored trainings to increase Partners' ability to raise money, recruit and manage volunteers, communicate with their members, and engage local communities around Grand Staircase in educational activities. *Id.* at ¶¶ 8–10.  Partners was the first group to receive a grant from CLF and, since 2008, has received 21 grants from the Foundation.  *Id.* at ¶ 10.

Finally, in recognition of the substantial paleontological resources within both Monuments' borders, SVP and its members have conducted extensive paleontological field work within Grand Staircase and Bears Ears National Monuments.  SVP's members have been active in documenting Grand Staircase's fossil resources since before the Monument was designated in 1996.  *See* Mot. to Intervene & Mem. in Supp., Ex. 4 ¶¶ 8–20 (Decl. of David Polly) *Garfield Cnty. et al., v. United States*, 22-cv-00059-DN-PK (D. Utah Nov. 11, 2022) ECF No. 31-4 (*hereinafter* "Polly Decl.")  SVP's members were among the original advocates for the creation of Grand Staircase in 1996.  *Id.* at ¶ 12.  They also advocated for the creation of Bears Ears National Monument in 2016.  *Id.* at ¶ 38.  Indeed, the Presidential Proclamations establishing both Monuments specifically mention research conducted by SVP members.  *Id.* at ¶¶ 12, 38.  As of November 1, 2022, 53 SVP members had active paleontological research sites within Grand

11

Staircase (32) and Bears Ears (21), and others are actively planning research on the monuments in the near future. *Id.* at ¶¶ 14, 44.

Interests such as these "indisputabl[y]" qualify as the kind of interests necessary to justify intervention as of right under Rule 24(a). *WildEarth Guardians v. Nat'l Park Serv.*, 604 F.3d 1192, 1198 (10th Cir. 2010) (holding that a hunting and conservation group had a substantial interest, and could therefore intervene as of right, in a lawsuit challenging the National Park Service's plan to reduce the native elk population in Rocky Mountain National Park). Indeed, the Tenth Circuit has permitted environmental groups to intervene as defendants in prior litigation about Grand Staircase. In *Utah Association of Counties v. Clinton*, several counties within the state (including two of the Appellants in the instant action) brought suit seeking to "have declared illegal the Presidential Proclamation [originally] establishing the Grand Staircase Escalante National Monument." *Utah Ass'n of Cntys.*, 255 F.3d at 1248. Intervening conservation groups "claim[ed] an interest relating to the monument . . . by virtue of their support of its creation, their goal of vindicating their conservationist vision through its preservation, their use of the monument in pursuit of that vision, and their economic stake in its continued existence." *Id.* at 1252. The Tenth Circuit concluded that these interests were "sufficiently related" to the question of the existence of the

Monument and its boundaries "to support intervention as of right." *Id* at

1252–53. That reasoning applies with equal force here.

C.      Plaintiffs' Action Would Impair Proposed Intervenors' Interests

Under Rule 24(a), intervenors must also demonstrate that "the

disposition of this action may as a practical matter impair or impede their

ability to protect their interest." *Utah Ass'n of Cntys.*, 255 F.3d at 1253. This

burden "is minimal," and a would-be intervenor "must show only that

impairment of its substantial legal interest is possible." *Id.* The Tenth

Circuit in *Utah Association of Counties* found that similarly situated

environmental groups met this requirement, reasoning that is was "not

speculative to conclude that the protection accorded the intervenors' interest

in preserving the wilderness nature of the monument land would be

diminished if the land were to lose its designation as a national monument."

*Id.* at 1254.

The same reasoning controls here. Appellants present a strikingly

narrow theory of the scope of Presidential authority under the Antiquities Act

that is at odds with the breadth of the Act's language, 116 years of practice,

Congressional purpose and intent, and prior court decisions — including from

the Supreme Court and this Court. Appellants theory of the Antiquities Act,

as they apply it, would vastly reduce the boundaries of lands designated as

monuments under the Act, asserting that "the area [within Grand Staircase-

13

Escalante] eligible for reservation under the Act takes up less than 1% of the total area reserved by President Biden." Compl. ¶ 298. They argue further that the President does not have authority under the Act to protect major categories of objects, including all non-biological objects, non-unique objects, and objects not somehow fixed to the land. *See, e.g.*, Mot. for Summ. J. ¶¶ 15–23, *Garfield Cnty. et al., v. United States*, 22-cv-00059-DN-PK (D. Utah Nov. 11, 2022) ECF No. 117; Compl. ¶¶ 220–221, *Garfield Cnty. et al., v. United States*, 22-cv-00059-DN-PK (D. Utah Nov. 11, 2022) ECF No. 2.

Appellants' cabined and ahistorical interpretation of the Act would strip the exceptional natural features of Grand Staircase of important legal protections and would subject it to the kinds of harms that motivated Congress to pass the Act in the first place, *see* Bauman Decl. ¶ 19–25; Murray Decl. ¶ 15; Holland Decl. ¶ 6–7, including harms resulting from ongoing and proposed mining operations within Monument borders. *See* Polly Decl. ¶25–28; Holland Decl. ¶ 7. This would impair Proposed Intervenors' long-established interest in the protection of Grand Staircase and the objects of historic and scientific interest that it has been created to protect. For similar reasons, the interests of SVP and CLF in Bears Ears would be impaired if Appellants were to prevail. *See, e.g.*, Mot. to Interv. of Utah Diné Bikéyah, Friends of Cedar Mesa, Archaeology Southwest, Patagonia Works, The Access Fund, and the National Trust for Historic Preservation in the United

14

States, *Garfield Cnty. et al., v. United States*, 22-cv-00059-DN-PK (D. Utah Nov. 11, 2022) ECF No. 33.

### D.  Existing Parties May Not Adequately Represent Proposed Intervenors' Interests

Proposed Intervenors need only show that their interests may not be adequately represented by the existing parties. *See, e.g.*, *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972); *Nat. Res. Def. Council, Inc. v. U.S. Nuclear Regul. Comm'n*, 578 F.2d 1341, 1346 (10th Cir. 1978). This burden is "minimal," *Trbovich*, 404 U.S. at 538, and "the possibility of divergence of interest[s] need not be great." *W. Energy All. v. Zinke*, 877 F.3d 1157, 1168 (10th Cir. 2017).  Rule 24(a) requires the Court to conduct a "discriminating comparison of the absentee's interests and the interests of existing parties," including by considering arguments that the parties may choose to develop in the litigation and important factual information to which the proposed intervenor has access. *See, e.g.*, *Bass v. Richardson*, 338 F. Supp. 478, 492 (S.D.N.Y. 1971) (citing 3A Moore's Federal Practice § 24.09-1 [4] at 314–16).  On review, this Court only needs to find that Proposed Intervenors' "interests [are] different without being adverse" to those of existing parties and must resolve "all reasonable doubts . . . in favor of allowing the absentee . . . to intervene so that the absentee may be heard in his own behalf."  7C Fed. Prac. & Proc. § 1909 (3d ed.)  Here, neither the

15

Federal Government, Tribal Groups, nor the Southern Utah Wilderness

Alliance ("SUWA") adequately represent Proposed Intervenors' interests.

> 1. *Federal Appellees May Not Adequately Represent Proposed Intervenors' Interests*

As the Tenth Circuit has recognized, when the existing defendant is the

government, this showing is "easily made," *Utah Ass'n of Cntys.*, 255 F.3d at

1254, because "the public interest the government is obligated to represent

may differ from the would-be intervenor's particular interest." *Kane Cnty.*

*Utah v. United States*, 928 F.3d 877, 892 (10th Cir. 2019).  Here, the Federal

Defendants do not adequately represent Proposed Intervenors' interests,

which are more focused than the government's general obligation to the

public.

In prior litigation involving Grand Staircase, the Tenth Circuit

concluded that the interests of nonprofit conservation organizations and the

government were not identical even though both sought to defend the legality

of the government's action designating the Monument's boundaries.  *Utah*

*Ass'n of Cntys.*, 255 F.3d at 1256.  Emphasizing that the government's broad

public interest could conflict with the narrower interests of the nonprofit, the

Tenth Circuit granted the group's motion to intervene as of right.  *See id*. at

1255–56.

Here, too, the government cannot adequately represent Proposed Intervenors' particularized interest in the protection of the Monument's resources for posterity. From 2017 until 2020, the Trump Administration purported to reduce the size of Grand Staircase and the scope of its protections, a decision which was defended in Court and implemented by BLM through a revised management plan. This recent history confirms the Tenth Circuit's observation nearly two decades ago that "it is not realistic to assume that the [government's] programs will remain static or unaffected by unanticipated policy shifts." *Id.* at 1256 (internal quotation marks and citation omitted). Proposed Intervenors provide a backstop to changing government priorities, which further justifies their intervention in this case.

In opposing Proposed Intervenors' motion to intervene as of right before the District Court, the Federal Defendants did not argue that they adequately represented Proposed Intervenors' interests. *See* ECF. No. 57. And the subsequent proceedings before the District Court made clear that Federal Defendants' interests are distinct from those of Proposed Intervenors. For example, Federal Defendants devoted fully 44 of 55 pages of legal argument in their Motion to Dismiss to arguments about the court's lack of jurisdiction to decide Antiquities Act cases — positions the scope of which Proposed Intervernors did not endorse. *See* Mot. to Dismiss at 12–49, 60–66.

17

If not appropriately cabined, these positions could be at odds with Proposed Intervenors' active challenge to President Trump's 2017 decision to shrink Grand Staircase by roughly half of its size as *ultra vires*. Proposed Intervenors' interest in preserving the Antiquities Act as a tool for the *protection* of special scientific and historic resources is not consistent with the Federal Defendants' apparent interest in insulating ***all*** Presidential Decisions under the Act from judicial review.[5]

      2.    *Tribal Appellees May Not Adequately Represent Proposed Intervenors' Interests*

The Tribal Intervenor-Appellees ("Tribes") do not adequately represent Proposed Intervenors's interests for at least two reasons. Most fundamentally, the Tribes have heretofore not asserted interests related to Grand Staircase — either in the District Court below or in the separate litigation involving President Trump's proclamations. Rather, their focus has been on the protection of the Bears Ears National Monument. Thus, the Tribes cannot adequately represent Proposed Intervenors' interests in the protection of Grand Staircase. Additionally, the Tribes are "sovereign political entities possessed of sovereign authority," *Nanomantube v. Kickapoo Tribe in Kan.*, 631 F.3d 1150, 1151–52 (10th Cir. 2011), and Proposed

---

[5] To the extent the Federal Defendants agree with Proposed Intervenors about the reviewability of Presidential decisions to revoke Monument status under the Antiquities Act, the Government's position could change with the next election.

Intervenors are not their constituents, meaning that the Tribes have no obligation to consider, much less seek to vindicate, Proposed Intervenors' views. *See Barnes v. Sec. Life of Denver Ins. Co.*, 945 F.3d 1112, 1125 (10th Cir. 2019) (Tribal nations "will and should, act only in the best interests of" their members). And even if they did, the Tribes, like the federal government, would have to balance those interests among many other competing interests and priorities.

### 3. *SUWA May Not Adequately Represent Proposed Intervenors' Interests*

Nor is it certain that the Southern Utah Wilderness Alliance ("SUWA") will adequately represent Proposed Intervenors, despite the groups' general alignment on conservation-related issues. SUWA, which successfully intervened in the District Court, has admitted that it may not adequately represent Proposed Intervenors. ECF. No. 162 at 4–5 ("SUWA Intervenors do not represent indigenous, paleontological, or archaeological advocacy groups"). SUWA's admission is based in part on the fact that GSEP is the primary group engaged in on-the-ground Monument management, including through landscape restoration, invasive species treatment, and mitigation of visitor impacts. GSEP has active conservation projects on the Monument requiring regular interaction and cooperation with BLM, and has entered into a formal partnership agreement with BLM to accomplish these goals.

19

Unlike SUWA, GSEP serves as the coordinating partner and leads organization for projects authorized by the Escalante River Watershed Project. SUWA's briefs before the district court could not take advantage of any of this expertise.

In addition, GSEP, unlike SUWA, coordinates with Tribal groups with ancestral connections to Grand Staircase so as to advocate for and facilitate meaningful Tribal inclusion in Monument management efforts. As a result, GSEP has unique interests that will drive litigation and the scope of potential settlement proceedings, particularly related to BLM's land-management priorities. Appellants have raised claims related to the sufficiency of the Monument management plan and seek relief that would set aside management planning efforts, directly affecting GSEP's monument administration interests.

Conservation Lands Foundation is the only non-profit organization in the country that is dedicated to promoting conservancy through the National Landscape Conservation System and that focuses on all BLM-administered national monuments across the United States.

Finally, Grand Staircase's paleontological resources are central to its status as a national monument, and, unlike SUWA, SVP has organizational expertise related to those resources, and its mission is the scientific study of paleontological resources. As a result, SVP is the only organization in this

case that can provide detailed information about the density of paleontological resources throughout the Monuments.  Moreover, SVP's members have active research projects on the Monuments.  Only SVP is able to shed light on the importance of preserving the areas in which those resources and active projects are situated and demonstrate why the boundaries are the "smallest area compatible" with the protection of those resources and research interests.

Though Proposed Intervenors and SUWA are generally aligned on their overarching goals for the Monument, Proposed Intervenors have different areas of expertise and different priorities that SUWA does not represent.

Accordingly, because Proposed Intervenors satisfy all requirements of Rule 24(a) and have Article III standing, this Motion to Intervene should be granted.

## II.    The Court Should Grant Permissive Intervention in the Alternative

In the event this Court does not grant intervention as of right, Proposed Intervenors should be permitted to intervene pursuant to Federal Rule of Civil Procedure 24(b), which provides that, "[o]n timely motion, the court may permit anyone to intervene who . . . has a claim or defense that

shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b).

In exercising its discretion, a court considers "whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights," Fed. R. Civ. P. 24(b)(3), and "whether the interveners will significantly contribute to the full development of the underlying factual issues in the suit and to the just and equitable adjudication of the legal questions presented." *Utah ex rel. Utah State Dep't of Health v. Kennecott Corp.*, 232 F.R.D. 392, 398 (D. Utah 2005). Proposed Intervenors satisfy each of these factors.

First, the defenses asserted by Proposed Intervenors in their proposed Answer in the District Court, and that they plan to assert in their brief on appeal, share common questions of both law and fact with the main action regarding the legality of President Biden's Proclamation and the distribution and nature of objects of historic and scientific importance within the Monument.

Second, intervention would not unduly delay or prejudice the rights of the original parties. Again, this Motion comes in the earliest phase of the appeal, before the Appellants have filed any appeals brief.

Third, Proposed Intervenors have familiarity with the relevant facts as well as the legal questions at the heart of this case, and will aid the Court's resolution of the issues. Proposed Intervenors bring two unique perspectives

to the litigation.  First, they have significant knowledge of the Monument and its resources.  The legal dispute in this case may turn, in part, on what constitutes the "smallest area compatible" with the proper care and management of the objects within Grand Staircase, which, in turn, depends on the value, location, and needs for protection of those objects.  Proposed Intervenors have extensive knowledge about these issues.  Second, as demonstrated by their prior extensive litigation, Proposed Intervenors have expertise regarding the legal issues implicated by Appellants' claims, including the history and scope of the Antiquities Act, and would meaningfully contribute to the development of those issues.

Accordingly, even if this Court finds that Proposed Intervenors do not satisfy the standard for intervention as of right, the Motion to Intervene is proper under Rule 24(b).

## III.  Conclusion

For the foregoing reasons, this Court should grant Proposed Intervenors' Motion to Intervene.


September 18, 2023                    Respectfully submitted,


23

<u>/s/ *Raymond Scott Berry*</u>
Raymond Scott Berry
P.O. Box 9491
Salt Lake City, UT 84109
801-556-8515
rsberryslc@gmail.com

Gary S. Guzy
John Mizerak
Scott Shelton
Tyler Smith
Timothy Duncheon
(*Applications for admission forthcoming*)

COVINGTON & BURLING LLP
One CityCenter
850 Tenth St. NW
Washington, DC 20001-4956
(202) 662-5978
gguzy@cov.com
jmizerak@cov.com
sshelton@cov.com
tsmith@cov.com
tduncheon@cov.com

*Counsel for Proposed Intervenors Grand
Staircase Escalante Partners, Society of
Vertebrate Paleontology, and Conservation
Lands Foundation*

**Certificate of Compliance With Type-Volume Limit,
Typeface Requirements and Type Style Requirements**

1. This document compliance with the type-volume limit of Fed. R. App. P
   32(g) and the word limit of Fed. R. App. P. 5(c)(1) because, excluding
   the parts of the document exempted by Fed. R. App. P. 32(f) this
   document contains 5,082 words.

2. This document complies with the typeface requirements of Fed. R. App.
   P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6)
   because this document has been prepared in a proportionally spaced
   typeface using Microsoft Word 2016 in size 13, Century Schoolbook
   font.

**Date:** September 18, 2023                    /s/ *Raymond Scott Berry*
                                                Raymond Scott Berry
                                                P.O. Box 9491
                                                Salt Lake City, UT 84109
                                                801-556-8515
                                                rsberryslc@gmail.com

## Certificate of Service

I hereby certify that on September 18, 2023, I caused the foregoing document to be filed with the Clerk of the Court using the Court's CM/ECF system, and service was thereby effected electronically to all counsel of record.

**Date:** September 18, 2023

/s/ *Raymond Scott Berry*
Raymond Scott Berry
P.O. Box 9491
Salt Lake City, UT 84109
801-556-8515
rsberryslc@gmail.com