# UNITED STATES COURT OF APPEALS
# FOR THE TENTH CIRCUIT

GARFIELD COUNTY, UTAH, et al.,

    *Plaintiffs-Appellants*,

ZEBEDIAH GEORGE DALTON, et al.,

    *Consolidated Plaintiffs-Appellants*,

v.

JOSEPH R. BIDEN, JR. et al.,

    *Defendants-Appellees,*

HOPI TRIBE; et al.,

    *Defendant-Intervenors-Appellees.*

Nos. 23-4106, 23-4107
(D.C. No. 4:22-CV-00059-DN)
(D. Utah)

# APPELLANTS' JOINT RESPONSE
# TO MOTIONS TO INTERVENE

## TABLE OF CONTENTS

Table of Authorities ....................................................................................................iii

Introduction ...............................................................................................................1

Background.................................................................................................................2

Argument ...................................................................................................................7

    a.    The applications are not "timely." ................................................8

    b.    The applicants' interests are "adequately represented." .....................................13

    c.    Permissive intervention is inappropriate here...............................................19

Conclusion.................................................................................................................20

Certificate of Compliance ........................................................................................22

Certificate of Service ................................................................................................22

# TABLE OF AUTHORITIES

## Cases

*Bottoms v. Dresser Indus., Inc.*,
  797 F.2d 869 (10th Cir. 1986) ................................................................14, 15, 16

*Brewer v. Republic Steel Corp.*,
  513 F.2d 1222 (6th Cir. 1975) ...................................................................... 20

*Bumgarner v. Ute Indian Tribe of Uintah & Ouray Rsrv.*,
  417 F.2d 1305 (10th Cir. 1969) .................................................................14, 16

*Butler, Fitzgerald & Potter v. Sequa Corp.*,
  250 F.3d 171 (2d Cir. 2001) ......................................................................... 15

*Cameron v. EMW Women's Surgical Ctr.*,
  142 S. Ct. 1002 (2022) ...........................................................................passim

*Childers v. Crow*,
  1 F.4th 792 (10th Cir. 2021) ........................................................................ 12

*City of San Antonio v. C.A.B*,
  374 F.2d 326 (D.C. Cir. 1967) ...................................................................... 14

*City of Stilwell v. Ozarks Rural Elec. Co-op*,
  79 F.3d 1038 (10th Cir. 1996) ...............................................................8, 14, 16

*Cnty. of Santa Fe v. Pub. Serv. Co. of New Mexico*,
  311 F.3d 1031 (10th Cir. 2002) .................................................................... 17

*Cutter v. Wilkinson*,
  544 U.S. 709 (2005) .................................................................................... 12

*Dalton, et al., v. United States*,
  No. 22-cv-00060-DN (D. Utah) ......................................................................2

*Elliott Indus. Ltd. P'ship v. BP Am. Prod.*,
  407 F.3d 1091 (10th Cir. 2005) ................................................................. 7, 15

*Garfield Cnty. et al., v. United States*,
  No. 22-cv-00059-DN-PK (D. Utah) ..................................................................2

*Hutchinson v. Pfeil*,
105 F.3d 562 (10th Cir. 1997) ............................................................. 12

*Hutchinson v. Pfeil*,
211 F.3d 515 (10th Cir. 2000) ............................................. 11, 12, 19

*Jones v. Prince George's Cty., Maryland*,
348 F.3d 1014 (D.C. Cir. 2003) ......................................................... 15

*Lumbermens Mut. Cas. Co. v. Rhodes*,
403 F.2d 2 (10th Cir. 1968) ............................................................. 8, 9

*McHenry v. Commissioner*,
677 F.3d 214 (4th Cir. 2012) ............................................................. 20

*N.M. Dep't of Game v. DOI*,
854 F.3d 1236 (10th Cir. 2017) ......................................................... 17

*NAACP v. New York*,
413 U.S. 345 (1973) ...............................................................passim

*NRDC v. N.Y. State D.E.C*,
834 F.2d 60 (2d Cir. 1987) ............................................................... 14

*NRDC v. NRC*,
578 F.2d 1341 (10th Cir. 1978) ......................................................... 14

*Oklahoma ex rel. Edmondson v. Tyson Foods, Inc.*,
619 F.3d 1223 (10th Cir. 2010) ..................................................... 9, 10

*San Juan Citizens All. v. Stiles*,
654 F.3d 1038 (10th Cir. 2011) ......................................................... 10

*San Juan Cty. v. United States*,
503 F.3d 1163 (10th Cir. 2007) (en banc) ................................... 13, 14

*SEC v. Merrill Scott Assoc. LTD*,
600 F.3d 1262 (10th Cir. 2010) ..................................................... 5, 12

*TGP Commc'ns, LLC v. Doe*,
2023 WL 4230020 (2d Cir. June 28) ................................................ 13

*United States v. Ahmad*,
499 F.2d 851 (3d Cir. 1974) ......................................................... 11, 12

*United States v. Hardwell*,
  80 F.3d 1471 (10th Cir. 1996) .............................................................. 10

*United States v. Yonkers Bd. of Educ.*,
  801 F.2d 593 (2d Cir. 1986) ...................................................................8

**Statutes**

28 U.S.C. §636(b)(1)(A) ........................................................................ 5, 12

54 U.S.C. §320301 ....................................................................................2

**Presidential Proclamations**

*Bears Ears National Monument*,
  86 Fed. Reg. 57321 (Oct. 8, 2021) .......................................................2

*Grand Staircase-Escalante National Monument*,
  86 Fed. Reg. 57335 (Oct. 8, 2021) .......................................................2

**Rules**

Fed. R. Civ. P. 24.............................................................................passim

## INTRODUCTION

If there is any limitation to intervention in this Circuit, the three motions now before the Court should be denied. On applicants' own account, their motions were filed thirteen months after they learned that their interests were not adequately represented in this litigation. That is untimely under all binding precedent, leaving nothing else for the Court to decide. Applicants propose that this Court measure timeliness from the time of appeal, but black-letter law says that timeliness is measured from the time that the applicants learned their interests were not represented. What's more, applicants' interests *are* adequately represented. Fourteen intervenors already have party status and share the same objectives in this appeal. All seek the same outcome—affirmance of the district court's dismissal and the preservation of the challenged national monument reservations. And this appeal raises purely legal questions, separate from applicants' purported expertise. Finally, applicants cannot use these new motions to intervene in this Court as a workaround to appeal their earlier—and properly denied—motions to intervene in district court, which they have not appealed (and cannot appeal).

This Court should deny all three motions to intervene.

1

## BACKGROUND

**A.** This case concerns two national monument reservations created by President Biden in 2021. The two monument reservations were created under the Antiquities Act of 1906, which authorizes the President to reserve parcels of federal land to protect certain qualifying objects. 54 U.S.C. §320301. They cover a combined 3.23 million square miles in southern Utah—about twice the size of Delaware. *See Bears Ears National Monument*, 86 Fed. Reg. 57321 (Oct. 8, 2021); *Grand Staircase-Escalante National Monument*, 86 Fed. Reg. 57335 (Oct. 8, 2021).

The national monument reservations have so disrupted local life that two sets of Plaintiffs challenged them. The State of Utah, Garfield County, and Kane County filed their complaint on August 24, 2022. *Garfield Cnty. et al., v. United States*, No. 22-cv-00059-DN-PK (D. Utah) (hereinafter "D.Ct."), Doc. 2. They alleged that the monument reservations exceeded the President's statutory authority under the Antiquities Act and that the management plans implementing them were unlawful for the same reason. *See* D.Ct. Doc. 91 (Am. Compl.) at ¶¶370-83. And a coalition of private individuals and organizations filed their complaint on August 25, 2022. *Dalton, et al., v. United States*, No. 22-cv-00060-DN (D. Utah), Doc. 2. They brought the same claims. D.Ct. Doc. 88 (Dalton Am. Compl.). The Department of Justice has defended against all of these claims in full. *E.g.*, D.Ct. Doc. 113 (Federal Defendants' Mot. to Dismiss).

**B.** Five coalitions, consisting of a combined 26 parties, moved to intervene as defendants alongside the Department of Justice. First, four Tribes—the Hopi Tribe,

Navajo Nation, Ute Mountain Ute Tribe, and Pueblo of Zuni—moved to intervene to defend one monument reservation. D.Ct. Doc. 29 (Tribes Intervention Mot.). Plaintiffs did not oppose the Tribes' intervention. *Id.* at 2. The Tribes were granted intervention promptly. D.Ct. Doc. 52 (Intervention Order). The Tribes have been defending that reservation in full as well. *E.g.*, Doc. 114 (Tribes' Mot. to Dismiss).

Next, another coalition of ten groups moved to intervene to defend both reservations, and all ten were granted intervention. D.Ct. Doc. 27 (SUWA Intervention Mot.). This group of now-existing intervenors—the SUWA coalition—includes the Southern Utah Wilderness Alliance, Center for Biological Diversity, Grand Canyon Trust, Great Old Broads for Wilderness, National Parks Conservation Association, Natural Resources Defense Council, Sierra Club, The Wilderness Society, Western Watersheds Project, and WildEarth Guardians. *Id.* The SUWA coalition explained that these groups would represent a wide range of interests, including cultural interests, D.Ct. Doc. 27-9 at 3, spiritual interests, D.Ct. Doc. 27-4 at 12, conservation interests, D.Ct. Doc. 27-8 at 9, recreational interests, D.Ct. Doc. 27-3 at 3, and archaeological interests, D.Ct. Doc. 27-2 at 2. The SUWA coalition made clear: they would defend every inch of the challenged reservations. D.Ct. Doc. 27 at 3. After the magistrate judge granted their intervention, D.Ct. Doc. 122, they have defended the reservations in full, *e.g.*, D.Ct. Doc. 141 (SUWA Mot. to Dismiss).

Then, the three sets of coalitions whose motions are now before this Court also moved to intervene, ultimately unsuccessfully. The first group—the UDB coalition—

3

included the six parties who now move together again before this Court: Utah Diné Bikéyah, Friends of Cedar Mesa, Archaeology Southwest, Patagonia Works, The Access Fund, and the National Trust for Historic Preservation in the United States. D.Ct. Doc. 33 (UDB Intervention Mot.). The second group—the GSE Partners coalition—included the three parties who now move together again before this Court: Grand Staircase Escalante Partners, Society of Vertebrate Paleontology, and Conservation Lands Foundation. D.Ct. Doc. 31 (GSE Partners Intervention Mot.). And the third group— the AAA coalition—included the three parties who now move together again before this Court: American Anthropological Association, Archaeological Institute of America, and Society for American Archaeology. D.Ct. Doc. 34 (AAA Intervention Mot.). All three coalitions argued that their interests were not adequately represented from the time that the lawsuit was filed. *See* D.Ct. Doc. 31 at 13-14; D.Ct. Doc. 33 at 15-16; D.Ct. Doc. 34 at 14-16.

**C.** The magistrate judge denied all three of those coalitions' motions to intervene. D.Ct. Doc. 122. He explained that these coalitions were adequately represented by the existing parties, including the SUWA coalition. He explained that "SUWA Intervenors have a long history of advocacy for both monuments, much like the other three groups of non-profit organizations," and that "SUWA intervenors' interests are broad enough to encompass and represent the recreational, cultural, scientific, and conservation interests asserted by the other proposed intervenors." *Id.* at 13. "It is hard to imagine a scenario where the SUWA intervenors' interests would be averse to the interests of the

three remaining groups of non-profit organizations." *Id.* The magistrate judge also denied permissive intervention to these three parties because "adding all 22 proposed, non-profit organizations as intervenor-defendants in this case is inefficient and will unduly delay the proceedings for the existing parties." *Id.* at 14.

After the magistrate judge ruled on intervention, both sets of Plaintiffs and the three coalitions objected. Plaintiffs objected to the admission of the SUWA coalition. D.Ct. Doc. 147 (Plaintiffs' Objections). And all three coalitions that were denied intervention objected to those denials. D.Ct. Docs. 145 (UDB), 146 (GSE Partners), 148 (AAA). The district court has not ruled on any objections. D.Ct. Doc. 176. The magistrate judge's earlier rulings admitting the SUWA coalition and denying the three other coalitions are not yet appealable and have not yet been appealed. *See SEC v. Merrill Scott Assoc. LTD*, 600 F.3d 1262, 1269 (10th Cir. 2010); 28 U.S.C. §636(b)(1)(A).

Without ruling on those objections, the district court then dismissed the case under Rule 12(b)(6) for failure to state a claim. D.Ct. Doc. 180 (Dismissal). It held that Plaintiffs' claims that the President exceeded his statutory authority were unreviewable. *Id.* at 13-19. Its holding did not depend on any facts specific to the two challenged reservations. Instead, it held that *any* reservation, no matter the facts, cannot be challenged in court because the Act lacks judicially enforceable limits. *E.g.*, *id.* at 18 ("Even if Individual Plaintiffs were granted leave to amend their complaint, they would not be able to plead the *ultra vires* exception."). The district court also held that the interim

management plans were not final agency action and were therefore unreviewable. *Id.* at 19-26.

**D.** Both sets of Plaintiffs appealed in August. D.Ct. Docs. 182, 185 (Notices of Appeal). After all existing parties coordinated concerning briefing schedules and word limits, this Court set a briefing schedule. *See* Doc. 010110919368. Plaintiffs' briefs and joint appendix are due later this month. *Id.* at 2. After Federal Defendant-Appellees file their response brief, each set of existing intervenors—the Tribes and the SUWA coalition—will file its own full brief not to exceed 15,300-words. *Id.* at 3.

**E.** Applicants now move again to intervene on appeal. *See* Doc. 010110920930 ("UDB Mot."); Doc. 010110921587 ("GSE Partners Mot."); Doc. 010110927348 ("AAA Mot."). These motions to intervene were filed on September 15, 18, and 25, 2023. *Id.* All three coalitions, representing a combined twelve additional parties, argue that they are entitled to intervene as of right and entitled to permissive intervention.

Applicants argue that their intervention motions are "timely," Fed. R. Civ. P. 24, because they were filed just over a month after the *notices of appeal.* They say that their interests have not been adequately protected since the day this lawsuit was filed. *See* GSE Partners Mot. 17-23; UDB Mot. 23-27; AAA Mot. 20-23. But they ask this Court to measure timeliness not from when they learned their interests were inadequately protected, but instead from the time of the notices of appeal. *See* GSE Partners Mot. 9 (measuring from time of appeal); *accord* AAA Mot. 14 ("This appeal is at its beginning stages."); UDB Mot. 20 ("45 days before even the first appellate briefs").

Applicants argue that their interests in the property or transaction at issue in the lawsuit are "inadequately represented" by existing parties, Fed. R. Civ. P. 24(a), because of differences in character, perspective, and expertise from the existing intervenors. Applicants acknowledge their "general alignment on conservation-related issues" with existing intervenors. GSE Partners Mot. 21. But they emphasize other differences. They are "a coalition of organizations with cultural, spiritual, conservation, recreational, and archaeological, interests in protecting" the reservations. UDB Mot. 25. And they claim other motivations and expertise, such as a desire to ensure "recreational uses," *id.*, and special "technical competency" about "archaeological best practices," AAA Mot. 22. But applicants acknowledge that their objective is the same as existing intervenors'— "to protect the entire Monuments." *See* AAA Mot. 18; *accord* UDB Mot. 21; GSE Partners Mot. 15. Applicants do not identify any collusion or failure of existing intervenors to perform their basic duties.

## ARGUMENT

"[A] party seeking intervention on appeal must satisfy the prerequisites of Rule 24(a)." *Elliott Indus. Ltd. P'ship v. BP Am. Prod.*, 407 F.3d 1091, 1102 (10th Cir. 2005). "Under Rule 24(a), an applicant may intervene as a matter of right" only if the applicant meets four requirements: "(1) the application is timely, (2) the applicant claims an interest relating to the property or transaction which is the subject of the action, (3) the applicant's interest may be impaired or impeded, and (4) the applicant's interest is not

adequately represented by existing parties." *Id.*; *see* Fed. R. Civ. P. 24. If applicants fail to satisfy any one of these requirements, the motion to intervene must be denied.

Here, all applicants fail as to both requirement (1) and requirement (4). As to requirement (1), the applications are not "timely" because they were filed over a year after applicants became aware of the lawsuit. *Lumbermens Mut. Cas. Co. v. Rhodes*, 403 F.2d 2, 5 (10th Cir. 1968). And nothing has changed since then to make their interests any less adequately represented. As to requirement (4), applicants' interests in the property or transaction which is the subject of the action are "adequately represented by existing parties" because the existing intervenors have the identical goal in this appeal. *City of Stilwell v. Ozarks Rural Elec. Co-op*, 79 F.3d 1038, 1042 (10th Cir. 1996).

## A. The applications are not "timely."

**1.** The most straightforward reason for denying applicants' motions is untimeliness. "Whether intervention be claimed of right or as permissive, it is at once apparent, from the initial words of both Rule 24(a) and Rule 24(b), that the application must be '*timely*.'" *NAACP v. New York*, 413 U.S. 345, 365-66 (1973) (emphasis added). "If it is untimely, intervention must be denied." *Id.* Adding new parties in the middle of ongoing litigation "creates delay and prejudice to existing parties, and undermines the orderly administration of justice." *United States v. Yonkers Bd. of Educ.*, 801 F.2d 593, 596 (2d Cir. 1986) (internal citations omitted).

Nor is it disputable that timeliness is "measure[d] … from when the movant was on notice that its interests may not be protected by a party already in the case." *Oklahoma*

*ex rel. Edmondson v. Tyson Foods, Inc.*, 619 F.3d 1223, 1232 (10th Cir. 2010); *see also Cameron v. EMW Women's Surgical Ctr.*, 142 S. Ct. 1002, 1012-13 (2022) (timeliness measured from when "it became clear that the [applicants'] interests would [not] be protected by the parties in the case") (cleaned up). When, for instance, applicants believe that their interests were never adequately represented, timeliness is measured from when the lawsuit was filed. *See NAACP*, 413 U.S. at 367-68. An applicant has at least "two days" from that time, *id.*, but no more than "four months," *Lumbermens*, 403 F.2d at 5. The Supreme Court has held that a motion is untimely when it is filed three weeks after that time. *NAACP*, 413 U.S. at 360, 367.

Here, applicants perceived in August 2022—when these lawsuits were filed— that their interests would not be protected. *See* Doc. 2 (Compl.). Applicants make clear that, in their view, their interests have not been adequately protected since the day this lawsuit was filed. *See* GSE Partners Mot. 17-23; UDB Mot. 23-27; AAA Mot. 20-23. In fact, applicants first moved to intervene in the district court last November on the premise that their interests were not adequately represented at the time. D.Ct. Doc. 31 at 13-14 (GSE Partner coalition arguing last November that no party adequately represents their interests); D.Ct. Doc. 33 at 15-16 (UDB coalition arguing same); D.Ct. Doc. 34 14-16 (AAA coalition arguing same). That is why Plaintiffs did not oppose their motions last November on the basis that they were untimely.

But applicants' motions here do not seek to appeal from the order denying those motions. Rather, these are *new* motions to intervene that must be decided on their own

terms. And thus timeliness must still be measured from the time the applicants first understood that their interests were not adequately protected—August 2022. Instead, applicants argue that their timeliness should be measured from the time of *appeal*. *See* GSE Partners Mot. 9 (measuring from time of appeal); *accord* AAA Mot. 14 ("This appeal is at its beginning stages."); UDB Mot. 20 ("45 days before even the first appellate briefs"). But that ignores the hornbook rule that timeliness always is measured from when "it became clear that the [applicants'] interests would [not] be protected by the parties in the case." *Cameron*, 142 S. Ct. at 1012-13; *accord Tyson Foods, Inc.*, 619 F.3d at 1232; *NAACP*, 413 U.S. at 367-68. Applicants do not even acknowledge this contrary binding authority. And they cite no case decided by any court in American history to support their reimagination of the timeliness inquiry. *See* GSE Partners Mot. 17-23; UDB Mot. 23-27; AAA Mot. 20-23. It should be rejected.

Properly measured, these motions to intervene are plainly untimely. They were submitted over a year after they learned their interests were not adequately represented. They were filed on September 15, 18, and 25, 2023. GSE Partners Mot.; UDB Mot.; AAA Mot. Applicants cite no case where a delay of thirteen months was held to be timely. *See generally id.* And they have forfeited any argument that thirteen months is timely by failing to make that argument. *San Juan Citizens All. v. Stiles*, 654 F.3d 1038, 1056 (10th Cir. 2011); *see also United States v. Hardwell*, 80 F.3d 1471, 1492 (10th Cir. 1996).

And in the year since they filed those first motions to intervene, applicants' case for inadequate representation has only worsened. Fourteen new intervenors in the same position have been admitted as parties. *See* D.Ct. Doc. 52 (Tribes Intervention Order) (December 8, 2022); D.Ct. Doc. 122 (SUWA Intervention Order) (March 17, 2023). Applicants admit they share "general alignment on conservation-related issues" with the new parties. GSE Partners Mot. 21. Applicants nowhere allege that one party previously represented them but no longer does, as is typically the case with intervention on appeal. *E.g.*, *Cameron*, 142 S. Ct. at 1012. This Court should reject applicants' attempt to rewrite the law of intervention to measure timeliness from the time of appeal rather than when applicants knew that their interests were inadequately represented.

**2.** Given this dilemma, UDB applicants creatively propose that this Court treat their motion as timely because their *original* motion filed before the district court last year was timely. UDB Mot. 20 (arguing timeliness because they and others "moved to intervene [*below*] before any party had answered or moved for dismissal" and *those* "motions [were] timely"). The other two coalitions, to their credit, do not argue that they can transplant the timeliness of their first motions into these motions. *See generally* GSE Partners Mot. 9; AAA Mot. 14.

UDB applicants' proposal doesn't work. "Appellate intervention is not a means to escape the consequences of noncompliance with traditional rules of appellate jurisdiction and procedure." *Hutchinson v. Pfeil*, 211 F.3d 515, 519 (10th Cir. 2000); *accord United States v. Ahmad,* 499 F.2d 851, 854 (3d Cir. 1974)). The original motions to

intervene are not yet appealable and not before this Court. *See Merrill Scott Assoc. LTD*, 600 F.3d at 1269 ("objections resolved by the district court are a prerequisite to our review of a magistrate judge's order under §636(b)(1)(A)" (quoting *Hutchinson v. Pfeil*, 105 F.3d 562, 566 (10th Cir. 1997))); *see also* AAA Mot. 12; UDB Mot. 18; GSE Mot. 6-7. Those motions were decided by the magistrate judge and objected to, but the objections have not yet been resolved. *See* D.Ct. Docs. 122, 176. Again, these are new motions. *See* UDB Mot. ("Motion to Intervene on Appeal"). They therefore must be decided on their own terms. And they cannot be used as, "in effect, an attempt to obtain appellate review" of motions not yet before this Court. *Hutchinson*, 211 F.3d at 519.

That makes sense. Any other approach would allow applicants to "circumvent the requirements for taking an appeal." *Ahmad*, 499 F.2d at 854. It would also disrupt this Court's role as "a court of review, not of first view," with respect to the original motions filed before the district court. *Childers v. Crow*, 1 F.4th 792, 801 (10th Cir. 2021) (quoting *Cutter v. Wilkinson*, 544 U.S. 709, 719 n.4 (2005)). And because Plaintiffs likewise cannot currently appeal the magistrate judge's order *admitting* the SUWA coalition, it would undermine symmetry and evenhandedness to allow UDB applicants to effectively do so through a new motion now. *See* D.Ct. Docs. 122, 147, 176.

Nor will applicants be prejudiced by having to comply with appellate procedure and jurisdiction. If Plaintiffs are unsuccessful in this appeal, applicants will receive the outcome they seek—affirmance of the district court's dismissal. And if Plaintiffs are successful in this appeal, the district court will decide the applicants' intervention

objections. This Court will then have the opportunity to review all of the below intervention with the benefit of a district court decision and proper briefing. Further, as discussed below, applicants may still participate in this appeal by filing an amicus brief that expresses their unique perspectives.

**3.** Finally, letting applicants intervene now would prejudice the existing parties to this appeal by requiring them to accommodate, coordinate with, and respond to twelve new parties and three new sets of lawyers on the eve of their principal briefs' due date. *See TGP Commc'ns, LLC v. Doe*, 2023 WL 4230020, at *1 (2d Cir. June 28) ("permitting [applicants] to intervene at this late stage 'would unduly delay the adjudication of the rights of the original parties … at least by requiring the parties and the Court to respond to an additional set of papers, likely to be redundant of other parties' and intervenors' papers'"); *see also San Juan Cty. v. United States*, 503 F.3d 1163, 1206 (10th Cir. 2007) (en banc) (plurality op.) ("One of the arts of litigation is keeping matters as simple as possible. We have been instructed from childhood that too many cooks spoil the broth.") (denying intervention of conservation non-profits).

Because applicants' motions are "untimely," both as-of-right and permissive intervention "must be denied." *NAACP*, 413 U.S. at 365-66.

## B. The applicants' interests are "adequately represented."

**1.** When an applicant's interests in the property or transaction at issue in the lawsuit are adequately represented by existing parties, its motion for intervention must be denied. Fed. R. Civ. P. 24(a). The burden is on the "movant in intervention to show

that the representation by parties may be inadequate." *NRDC v. NRC*, 578 F.2d 1341, 1345 (10th Cir. 1978). "[W]hen the number of parties petitioning to intervene in a proceeding is such that allowance of intervention of all may unduly burden the proceeding, more may be required to demonstrate a substantial interest warranting intervention than where no problem of multiplicity of parties is presented." *City of San Antonio v. C.A.B*, 374 F.2d 326, 332 (D.C. Cir. 1967) (Wright, J.). Here, applicants cannot meet their burden because their objective is identical to the existing intervenors', who will ably litigate the purely legal issues in this appeal.

An existing party is adequate—and therefore an applicant is not entitled intervene—if the existing party's "objective is identical." *Stilwell*, 79 F.3d at 1042. "The most common situation in which courts find representation *adequate* arises when the objective of the applicant for intervention is identical to that of one of the parties." *Bottoms v. Dresser Indus., Inc.*, 797 F.2d 869, 872 (10th Cir. 1986) (emphasis in original). For instance, if both seek the same ultimate remedy, their objectives are identical and representation is adequate. *Id.*

When the litigation objective is identical, other differences don't matter. *Id.* It doesn't matter if applicants and existing parties have a different "motivation" for participating in the lawsuit. *Stilwell*, 79 F.3d at 1042; *accord San Juan Cty.*, 503 F.3d at 1204 (plurality op.); *NRDC v. N.Y. State D.E.C*, 834 F.2d 60, 61-62 (2d Cir. 1987). It doesn't matter if applicants "would have handled the [litigation] of the case differently." *Bumgarner v. Ute Indian Tribe of Uintah & Ouray Rsrv.*, 417 F.2d 1305, 1308 (10th Cir. 1969).

14

It doesn't even matter if applicants and existing parties are in a "serious dispute" related to the litigation, so long as they agree on relief. *Bottoms*, 797 F.2d at 872-73.

As this Court has explained, it is never enough if the parties simply have different characteristics and perspectives. On the basis of adequate representation, "shareholders have been denied intervention in derivative actions when their interests were represented by … the corporation," "insurance agents have been denied intervention in actions between the insurer and insured," and "remaindermen under a trust and heirs of an estate have been denied intervention in actions brought by fiduciaries." *Bottoms*, 797 F.2d at 872 (internal citations omitted). Although those applicants all had significant differences with existing parties, their intervention was denied in every case because they sought the same *outcome. Id.* To show inadequacy, applicant must show a genuine divergence of desired outcomes or objectives. An applicant must show, for instance, that the existing party refuses to appeal, *see Cameron*, 142 S. Ct. 1002, or will not raise claims or defenses, *see Elliott Indus. Ltd. P'ship*, 407 F.3d at 1103. If it were enough that the existing parties have different mission statements or expertise, then "the requirement of Rule 24 would have no meaning." *Jones v. Prince George's Cty., Maryland*, 348 F.3d 1014, 1019-20 (D.C. Cir. 2003) (quoting *Butler, Fitzgerald & Potter v. Sequa Corp.*, 250 F.3d 171, 181 (2d Cir. 2001)).

Absent genuinely split objectives, applicants must show a dereliction of duty. They "must make 'a concrete showing' of "collusion between the representative and an opposing party, that the representative has an interest adverse to the applicant, or

15

that the representative failed to represent the applicant's interest." *Bottoms*, 797 F.2d at 872-73; *see also Bumgarner*, 417 F.2d at 1308.

Applicants point to no differences in objectives, and instead emphasize only their differences in motivation. Applicants acknowledge their "general alignment on conservation-related issues" with existing intervenors. GSE Partners Mot. 21. But they emphasize that, for example, they are "a coalition of organizations with cultural, spiritual, conservation, recreational, and archaeological, interests in protecting" the reservations. UDB Mot. 25. They also point out that some of them are motivated by their interest in "recreational uses." *Id.* Others are motivated by their interest in "preserving federal grant funds and permits." AAA Mot. 22. And others are motivated by their "conservation projects." GSE Partners Mot. 19. Applicants also list every unique fact about themselves, such as that an applicant has special "technical competency" about "archaeological best practices" AAA Mot. 22.

These differences do not demonstrate inadequate representation for three independent reasons.

*First*, those are exactly the sorts of differences in motivation that are never sufficient for intervention purposes. Applicants do not attempt to meet the actual standard: a difference in "*objective.*" *Stilwell*, 79 F.3d at 1042. Their objectives are "identical"—affirmance of the district court's dismissal. *Bottoms*, 797 F.2d at 872. Applicants' objective is "to protect the entire Monuments." *See* AAA Mot. 18; *accord* UDB Mot. 21 ("preservation of the Monument"); GSE Partners Mot. 15 (same). Existing intervenors'

objective is exactly the same. *See* Doc. 27 at 3 ("SUWA Intervenors' interests in … preserving the Monuments"). Existing intervenors intend to litigate this appeal. *Cf. Cameron*, 142 S. Ct. at 1012-13. Existing intervenors will file two briefs of up to 15,300 words each. *See* Briefing Schedule Order. Parties with this sort of alignment are always held to be adequate representatives. *E.g.*, *Stillwell*, 79 F.3d at 1042; *Bottoms*, 797 F.2d at 872-73. Applicants do not claim that the existing intervenors are colluding with Plaintiffs or have failed in their basic duties. *Bottoms*, 797 F.2d at 872–73. It is practically always the case that an applicant has a different motivation, different perspective, and different knowledge than an existing party. *See id.* at 872 (collecting cases); *see also e.g.*, *Stillwell*, 79 F.3d at 1042 (Arkansas electric provider adequately represented non-profit generation and transmission cooperative). But that is never enough to warrant intervention.

**Second**, any differences are irrelevant for the purposes of *this* appeal. For example, applicants emphasize their special areas of expertise related to certain resources within the reservations. AAA Mot. 22. Likewise, applicants want to use their experiences to explain "why the boundaries are the 'smallest area compatible' with the protection of those resources and research interests." GSE Partners Mot. 23. But those are factual merits questions. This appeal arises out of a Rule 12(b)(6) dismissal, so Plaintiffs' facts will be accepted as true. *Cnty. of Santa Fe v. Pub. Serv. Co. of New Mexico*, 311 F.3d 1031, 1034-35 (10th Cir. 2002). And because this is an appeal, nobody can introduce new facts or expertise anyway. *N.M. Dep't of Game v. DOI*, 854 F.3d 1236, 1240 n.1 (10th

Cir. 2017). Applicants cite no cases where intervention on appeal was allowed based on purported factual expertise or experience alone.

**Third**, the purported differences are misleading. For example, applicants say that they have "cultural, spiritual, conservation, recreational, and archaeological, interests" in "*contrast*" to existing intervenors. UDB Mot. 25 (emphasis added); *accord* GSE Partners Mot. 5. But existing intervenors already represent every single one of the interests that applicants list as supposedly unique. Existing intervenors' district court papers detailed their "cultural" interests. *E.g.*, D.Ct. Doc. 27-9 at 3 ("the Trust has worked to achieve the permanent protection of the outstanding cultural … resources"); *accord* D.Ct. Docs. 27-3 at 3, 27-4 at 12, 27-5 at 15, 27-11 at 18. Existing intervenors detailed their "spiritual" interests. *E.g.* D.Ct. Doc. 27-4 at 12 ("Sierra Club's … spiritual … interests"); *accord* D.Ct. Docs. 27-2 at 10, 27-6 at 5, 27-5 at 3, Doc. 27-3 at 3. Existing intervenors detailed their "conservation" interests. *E.g.*, D.Ct. Doc. 27-8 at 9 ("WWP's conservation interests"); *accord* D.Ct. Docs. 27-5 at 15, 27-7 at 18, 27-9 at 12. Existing intervenors detailed their "recreational" interests. *E.g.*, D.Ct. Doc. 27-3 at 3 ("recreational … interests of the Alliance and its members"); *accord* D.Ct. Docs. 27-11 at 14; 27-2 at 10. And existing intervenors detailed their "archaeological" interests. *E.g.*, D.Ct. Doc. 27-2 at 2 (interest in "archaeological and paleontological resources"); *accord* D.Ct. Docs. 27-8 at 3; 27-3 at 4. Applicants ask this Court to ignore the record precisely because it shows that existing intervenors are more than adequate.

**2.** Again, the UDB applicants ask this Court in the alternative to "not consider Tribal Intervenors and SUWA Intervenors in evaluating adequacy of representation" because they were not parties when the UDB coalition filed its first motions to intervene. UDB Mot. 24. Again, no other party appears to suggest that this Court can make that move. And again, it cannot. Because "[a]ppellate intervention is not a means to escape the consequences of noncompliance with traditional rules of appellate jurisdiction and procedure," UDB applicants cannot use appellate intervention to ask this Court to evaluate the facts as they existed at the time of their earlier motions. *Hutchinson*, 211 F.3d at 519.

**3.** Finally, applicants have not even tried to show that they are inadequately represented by each other. *See* GSE Partners Mot. 17-23; UDB Mot. 23-27; AAA Mot. 20-23. Therefore, this Court should not admit more than one applicant no matter what it determines as the adequacy of the existing intervenors. As applicants themselves have argued before, applicants to intervene must prove adequacy as to other applicants who move at the same time. *See* Pls.' Opp'n to Chevron's Mot. to Intervene at 2, 6, *Friends of Earth v. Haaland*, No. 21-cv-2317 (D.D.C. Dec. 8, 2021), docket no. 59; D.Ct. Doc. 168 (Gov't Resp. to Proposed Intervenors' Objections) at 4-5 (detailing applicants' past arguments against multiple intervenors).

**C. Permissive intervention is inappropriate here.**

Applicants are not entitled to permissive intervention here because the timeliness requirement applies equally to permissive intervention and intervention-as-of-right. *See*

Fed. R. Civ. P. 24(b) (permissive intervention only "on timely motion"). "Whether intervention be claimed of right or as permissive, it is at once apparent, from the initial words of both Rule 24(a) and Rule 24(b), that the application must be 'timely.'" *NAACP*, 413 U.S. at 365-66. "If it is untimely, intervention must be denied." *Id.*

Permissive intervention is also unwarranted where applicants may accomplish their objectives on appeal by serving as amici curiae. "Numerous cases support the proposition that allowing a proposed intervenor to file an amicus brief is an adequate alternative to permissive intervention." *McHenry v. Commissioner*, 677 F.3d 214, 227 (4th Cir. 2012) (collecting cases). Each of applicants' concerns regarding this appeal "can be avoided if" they "participate in the litigation as an amicus curiae." *Brewer v. Republic Steel Corp.*, 513 F.2d 1222, 1225 (6th Cir. 1975). As amici, applicants would be free to convey their special expertise and concerns. Plaintiffs will not oppose a request by applicants to submit amicus briefs in this appeal.

## CONCLUSION

This Court should deny all three motions to intervene.

Dated: October 5, 2023                    Respectfully submitted,

/s/ Brett A. Shumate                      /s/ Tyler R. Green
Brett A. Shumate                          Tyler R. Green (Utah Bar No. 10660)
Harry S. Graver                           CONSOVOY MCCARTHY PLLC
JONES DAY                                 222 S. Main Street, 5th Floor
51 Louisiana Ave., N.W.                   Salt Lake City, UT 84101
Washington, D.C. 20001                    (703) 243-9423
Telephone: (202) 879-3939                 tyler@consovoymccarthy.com
bshumate@jonesday.com

James M. Burnham
KING STREET LEGAL, PLLC
800 Connecticut Ave., N.W., Ste. 300
Washington, D.C. 20006
Telephone: (602) 501-5469
james@kingstlegal.com

Brady Brammer
BRAMMER RANCK, LLP
1955 W. Grove Parkway, Suite 200
Pleasant Grove, UT 84062
Telephone: (801) 893-3951
bbrammer@brfirm.com

*Counsel for Consolidated Plaintiff-Appellants*

Taylor A.R. Meehan (pro hac vice)
Jeffrey S. Hetzel (pro hac vice)
Kathleen L. Smithgall
 CONSOVOY MCCARTHY PLLC
1600 Wilson Boulevard, Suite 700
Arlington, Virginia 22209
(703) 243-9423
taylor@consovoymccarthy.com
jhetzel@consovoymccarthy.com
katie@consovoymccarthy.com

*Counsel for Plaintiff-Appellants Garfield
County, Utah; Kane County, Utah; State of
Utah*

Stanford E. Purser
Kathy A.F. Davis
 Utah Attorney General's Office
160 E. 300 S.
Salt Lake City, UT 84114-2320
(801) 538-9600

*Counsel for Plaintiff-Appellant State of
Utah*

**CERTIFICATE OF COMPLIANCE**

This opposition complies with F.R.A.P. 27(d)(2) because it contains 5,137 words.

It complies with F.R.A.P. 32(a) because it has been prepared in a proportionally spaced

typeface using Microsoft Word for Office 365 in 14-point Garamond.

*/s/ Tyler R. Green*
Tyler R. Green

**CERTIFICATE OF SERVICE**

I certify that I filed this document on October 5, 2023 through this Court's

CM/ECF system, which will send a notice of filing to all registered users.

*/s/ Tyler R. Green*
Tyler R. Green