No. 23-4106

_____

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE TENTH CIRCUIT

_____

GARFIELD COUNTY, UTAH, ET AL.,
*Plaintiffs-Appellants,*

and

ZEBEDIAH GEORGE DALTON, ET AL.,
*Consolidated Plaintiffs,*

*v.*

JOSEPH R. BIDEN, JR., ET AL.,
*Defendants-Appellees,*

and

HOPI TRIBE, ET AL.,
*Defendant Intervenors-Appellees.*

_____

Appeal from the United States District Court
for the District of Utah
(Dist Ct. Case No. 4:22-cv-00059-DN-PK)

_____

## MOTION OF MANHATTAN INSTITUTE AND REASON
## FOUNDATION FOR LEAVE TO FILE BRIEF AS *AMICI CURIAE*
## IN SUPPORT OF PLAINTIFFS-APPELLANTS AND REVERSAL

_____

Ilya Shapiro
Tim Rosenberger
MANHATTAN INSTITUTE
52 Vanderbilt Ave.
New York, NY 20017
(212) 599-7000
ishapiro@manhattan.institute

## CORPORATE DISCLOSURE STATEMENT AND
## CERTIFICATE OF INTERESTED PERSONS

Pursuant to Federal Rule of Appellate Procedure 26.1, counsel for *amici* Manhattan Institute and Reason Foundation certifies that (1) neither *amicus* has any parent corporations, and (2) no publicly held companies hold 10% or more of the stock or ownership interest in either *amicus*. *Amici* are both nonprofit corporations exempt from income tax under Section 501(c)(3) of the Internal Revenue Code, 26 U.S.C. § 501(c)(3).

Counsel also certifies that the following listed persons and entities as described in 10th Cir. R. 46 have an interest in the outcome of this case and were not included in the Certificates of Interested Persons in briefs that were previously filed.

1. Ilya Shapiro
2. Timothy Rosenberger, Jr.
3. Manhattan Institute
4. Reason Foundation

*/s/ Ilya Shapiro*
Ilya Shapiro
Counsel for *Amici Curiae*

## MOTION FOR LEAVE TO FILE BRIEF *AMICI CURIAE*

Pursuant to Fed. R. App. P. 29(a)(3), the Manhattan Institute and Reason Foundation respectfully submit this motion for leave to file a brief as *amici curiae* in the above-captioned proceeding. Counsel for *amici* sought and received consent from all parties except intervenors Southern Utah Wilderness Alliance, whose counsel took no position on our request for consent to file.

## INTEREST OF MOVANTS AND
## THE BRIEF'S RELEVANCE AND DESIRABILITY

The Manhattan Institute (MI) is a nonpartisan public policy research foundation whose mission is to develop and disseminate new ideas that foster greater economic choice and individual responsibility. To that end, it has historically sponsored scholarship supporting the rule of law and opposing government overreach.

Reason Foundation is a nonpartisan and nonprofit public policy think tank, founded in 1978. Reason advances a free society by developing, applying, and promoting libertarian principles, including individual liberty, free markets, and the rule of law. Reason produces respected public policy research on a variety of issues and publishes the critically acclaimed Reason magazine.

MI and Reason have participated as *amici curiae* in numerous cases, including in this Court, to provide information and analysis relevant to their respective expertise.

Courts are "usually delighted to hear additional arguments from able amici that will help the court toward right answers." *Mass. Food Ass'n v. Mass. Alcoholic Beverages Control Comm'n*, 197 F.3d 560, 567 (1st Cir. 1999). This is particularly true when an *amicus* provides "information on matters of law about which there was doubt, especially in matters of public interest." United *States v. Michigan*, 940 F.2d 143, 164 (6th Cir. 1991) (citation omitted). "'No matter who a would-be amicus curiae is, therefore, the criterion for deciding whether to permit the filing of an amicus brief should be the same: whether the brief will assist the judges by presenting ideas, arguments, theories, insights, facts, or data that are not to be found in the parties' briefs.'" *Animal Prot. Inst. v. Merriam*, No. 06-3776, 2006 U.S. Dist. LEXIS 95724, at *4 (D. Minn. Nov. 16, 2006) (quoting *Voices for Choices v. Illinois Bell Telephone Co.*, 339 F.3d 542, 545 (7th Cir. 2003)).

MI and Reason's participation as *amici* here will help the Court in resolving a significant issue of public importance: the reviewability of

presidential actions under the Antiquities Act. The district court found that such actions are unreviewable, but this conclusion contradicts both case law and legal scholarship. Indeed, scholars have cried out for judicial guidance in reviewing presidential actions under the Antiquities Act.

*Amici* are well-suited to help this Court in considering guidelines for the reviewability of presidential actions under the Antiquities Act. The proposed brief highlights requests from legal scholars for more guidance and discusses cases where review has already occurred. MI and Reason offer a unique perspective on the district court's decision and how it encourages governmental overreach.

## CONCLUSION

MI and Reason respectfully request that this Court grant their motion for leave to file a brief in support of plaintiffs-appellants.

Dated: November 6, 2023

Respectfully submitted,

Ilya Shapiro
Tim Rosenberger
MANHATTAN INSTITUTE
52 Vanderbilt Ave.
New York, NY 10017
(212) 599-7000
ishapiro@manhattan.institute

No. 23-4106

_____

IN THE UNITED STATES COURT OF APPEALS
FOR THE TENTH CIRCUIT

_____

GARFIELD COUNTY, UTAH, ET AL.,
*Plaintiffs-Appellants,*

and

ZEBEDIAH GEORGE DALTON, ET AL.,
*Consolidated Plaintiffs,*

*v.*

JOSEPH R. BIDEN, JR., ET AL.,
*Defendants-Appellees,*

and

HOPI TRIBE, ET AL.,
*Defendant Intervenors-Appellees.*

_____

Appeal from the United States District Court
for the District of Utah
(Dist Ct. Case No. 4:22-cv-00059-DN-PK)

_____

BRIEF OF *AMICI CURIAE* MANHATTAN INSTITUTE AND
REASON FOUNDATION IN SUPPORT OF PLAINTIFFS-
APPELLANTS AND REVERSAL

_____

Ilya Shapiro
Tim Rosenberger
MANHATTAN INSTITUTE
52 Vanderbilt Ave.
New York, NY 20017
(212) 599-7000
ishapiro@manhattan.institute

## CORPORATE DISCLOSURE STATEMENT AND
## CERTIFICATE OF INTERESTED PERSONS

Pursuant to Federal Rule of Appellate Procedure 26.1, counsel for *amici* Manhattan Institute and Reason Foundation certifies that (1) *amicus* do not have any parent corporations, and (2) no publicly held companies hold 10% or more of the stock or ownership interest in *amicus*. *Amicus* is a nonprofit corporation exempt from income tax under Section 501(c)(3) of the Internal Revenue Code, 26 U.S.C. § 501(c)(3).

Counsel also certifies that the following listed persons and entities as described in 10th Cir. R. 46 have an interest in the outcome of this case and were not included in the Certificates of Interested Persons in briefs that were previously filed.

1. Ilya Shapiro
2. Timothy Rosenberger, Jr.
3. Manhattan Institute
4. Reason Foundation

*/s/ Ilya Shapiro*
Ilya Shapiro
Counsel for *Amici Curiae*

# TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT AND CERTIFICATE OF INTERESTED PERSONS ..........................................................ii

TABLE OF AUTHORITIES.................................................................. iii

INTEREST OF *AMICI CURIAE*................................................................1

STATEMENT OF THE ISSUE.............................................................2

BACKGROUND .......................................................................2

SUMMARY OF THE ARGUMENT ........................................................3

ARGUMENT .............................................................................4

    I.    The district court erred in finding that a president's actions under the Antiquities Act are unreviewable..............4

    II.    President Biden's orders failed to set aside the smallest area. ......................................................................7

    III.    The district court's ruling needlessly implicates the nondelegation doctrine.........................................9

CONCLUSION ..........................................................................11

CERTIFICATE OF COMPLIANCE.......................................................12

CERTIFICATE OF SERVICE................................................................12

# TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Alaska v. Carter*, 462 F. Supp. 1155 (D. Alaska 1978) ............................5

*Cameron v. United States*, 242 U.S. 450 (1920)......................................5

*Cappaert v. United States*, 426 U.S. 128 (1976) .....................................5

*Garfield County v. Biden*,
    Case No. 4:22-cv-00059-DN-PK (D. Utah 2023)................................4-5

*Indus. Union Dep't, AFL-CIO v. Am. Petroleum Inst.*,
    448 U.S. 607 (1980) ..............................................................................11

*Laufer v. Looper*, 22 F.4th 871 (10th Cir. 2022) .....................................4

*Mass. Lobstermen's Ass'n v. Raimondo*, 141 S. Ct. 979 (2021) ........7, 8, 9

*Mass. Lobstermen's Ass'n v. Ross*,
    349 F. Supp. 3d 48 (D.D.C. 2018)...........................................................5

*Mistretta v. United States*, 488 U.S. 361 (1989) ................................9, 11

*Mountain States Legal Foundation v. Bush*,
    306 F.3d 1132 (D.C. Cir. 2002)...............................................................5

*Tulare County v. Bush*, 306 F.3d 1138 (D.C. Cir. 2002)...........................5

*United States v. California*, 436 U.S. 32 (1978)......................................5

*Utah Ass'n of Counties v. Clinton*, 255 F.3d 1246 (10th Cir. 2001) .........5

*Utah Ass'n of Counties v. Bush*, 316 F. Supp. 2d 1172 (D. Utah 2004) ...5

*Wyoming v. Franke*, 58 F. Supp. 890 (D. Wyo. 1945) ..............................5

### CONSTITUTIONAL PROVISIONS AND STATUTES

U.S. Const., art. IV, § 3, cl. 2...............................................................9-10

54 U.S.C. § 320301(b) ........................................................................4, 7-8

**OTHER AUTHORITIES**

Bryan Mette, *A Monumental Task: How Should Courts Review Challenges to Presidential Actions Taken Pursuant to the Antiquities Act?*, 104 Minn. L. Rev. 465 (2019) .................................... 6

Carol Hardy Vincent & Pamela Baldwin, National Monuments: Issues and Background (2004) ...................................................... 10-11

Janice Fried, *The Grand Staircase-Escalante National Monument: A Case Study in Western Land Management*, 17 Va. Envtl. L .J. 477 (1998) .............................................................. 11

H.R. Rep. No. 2224, 59th Cong., 1st Sess. 1 (1906) .................................. 8

Mark Squillace, *The Monumental Legacy of the Antiquities Act of 1906,* 37 Ga. L. Rev. 473 (2002) .................................................... 6, 8-9

Matthew W. Harrison, *Legislative Delegation and Presidential Authority: The Antiquities Act and the Grand Staircase-Escalante National Monument - A Call for a New Judicial Examination*, 13 J. Envtl. L. & Litig. 409 (1998) ................................................ 6-7, 9

Michael W. McConnell, *The President Who Would Not Be King* (2022) .................................. 10

## INTEREST OF *AMICI CURIAE*[1]

The Manhattan Institute ("MI") is a nonprofit public policy research foundation whose mission is to develop and disseminate new ideas that foster individual freedom. To that end, it has historically sponsored scholarship supporting the rule of law and opposing government overreach. MI has a particular interest in matters concerning commerce and economic development. MI scholars speak and write frequently on the prosperity unleashed by developing American land and how such development contributes to human flourishing and opportunity for all.

Reason Foundation is a nonpartisan and nonprofit public policy think tank, founded in 1978. Reason advances a free society by developing, applying, and promoting libertarian principles, including individual liberty, free markets, and the rule of law. Reason produces respected public policy research on a variety of issues and publishes the critically acclaimed Reason magazine. To further Reason's commitment to "Free Minds and Free Markets," Reason has participated as amicus curiae in many cases that involve major legal and constitutional issues.

---

[1] Pursuant to F.R.A.P. 29(a), *amici* state that this brief was not authored in any part by counsel for any party, and no person or entity other than *amici* and their counsel made a monetary contribution to the preparation or submission of this brief.

*Amici's* concern here is that President Biden's land grab could have disastrous economic effects. For example, the area covered by the Grand-Staircase-Escalante National Monument previously had a stable economy consisting of logging, mining, ranching, and farming. With the new limitations on the use of this land, most of these activities will cease. The least courts can do is review whether such restrictions are legal.

## STATEMENT OF THE ISSUE

Did the district court err in finding that a president's actions under the Antiquities Act are unreviewable?

## BACKGROUND

At issue are President Biden's proclamations concerning two national monuments: the Grand Staircase-Escalante and the Bears Ears, both of which are located in Utah. President Clinton designated the Grand Staircase-Escalante National Monument in 1996. President Trump reduced its size in 2017. President Biden re-enlarged it on October 8, 2021. President Obama designated the Bears Ears National Monument in 2016. President Trump reduced its size in 2017. President Biden re-enlarged it on October 8, 2021.

As a consequence of President Biden's actions, the Grand Staircase-Escalante Monument now constitutes 1.87 million acres (an expanse larger than Delaware), while the Bears Ears Monument constitutes 1.36 million acres (akin to Rhode Island plus Guam). His two enlargements together thus set aside over three million acres of land—an area roughly the size of Connecticut. His rationale was that entire landscapes could constitute "objects of historic or scientific interest" under the Antiquities Act. That pronouncement has serious negative repercussions on Utah's land, economy, resources, and the livelihood of its citizens.

Throughout this presidential tug-of-war over the size of the national monuments, numerous lawsuits were filed. The plaintiffs here challenged the president's actions and the government moved to dismiss their claims. The district court granted that motion and dismissed the case with prejudice.

## SUMMARY OF THE ARGUMENT

As Plaintiffs' complaint pleads facts sufficient for a claim upon which relief may be granted, the district court erred in granting the

government's motion to dismiss.[2] In finding that presidential actions under the Antiquities Act are unreviewable, the district court employed a cramped reading of existing case law and ignored the leading legal scholarship regarding presidential authority in this context.

The district court's grant of plenary, unreviewable power to the president has no basis in law. This Court should clear up the muddied waters of judicial review of the Antiquities Act and seize the opportunity to set guidelines for lower courts in other cases.

## ARGUMENT

## I.  The district court erred in finding that a president's actions under the Antiquities Act are unreviewable.

The district court found that President Biden's actions under the Antiquities Act were unreviewable: "Before deciding if the Proclamations are unlawful, the court must decide if they can be reviewed by a court. They cannot. Judicial review requires a waiver of sovereign immunity,

---

[2] A court reviewing a Rule 12(b)(6) motion must accept factual allegations as true and must draw reasonable inferences in a light most favorable to the plaintiff. *See, e.g.*, *Laufer v. Looper*, 22 F.4th 871, 875 (10th Cir. 2022). Under the Antiquities Act, the President is required to set aside "the smallest area compatible with the proper care and management of the objects to be protected." 54 U.S.C. § 320301(b). President Biden failed to comply with this requirement. As Plaintiffs' complaint—when factual allegations are considered as true and when reasonable inferences are drawn in plaintiffs' favor—states a claim upon which relief may be granted, the district court erred in granting Defendants' 12(b)(6) motion.

which is not present." *Garfield County v. Biden*, Case No. 4:22-cv-00059-DN-PK 12 (D. Utah 2023). This finding—that presidential action under the Antiquities Act is unreviewable—contravenes both case law and legal scholarship.

Courts have found the reviewability of presidential action under the Antiquities Act in numerous cases. *See, e.g.*, *Mass. Lobstermen's Ass'n v. Ross*, 349 F. Supp. 3d 48, 54 (D.D.C. 2018) ("Because Plaintiffs' claims assert that the president exceeded his statutory authority under the Antiquities Act—i.e., that the Proclamation was *ultra vires*—they are generally reviewable"); *see also United States v. California*, 436 U.S. 32, 36 (1978); *Cappaert v. United States*, 426 U.S. 128, 141–42 (1976); *Cameron v. United States*, 252 U.S. 450, 455–56 (1920); *Utah Ass'n of Counties v. Clinton*, 255 F.3d 1246 (10th Cir. 2001*); Utah Ass'n of Counties v. Bush*, 316 F. Supp. 2d 1172 (D. Utah 2004); *Alaska v. Carter*, 462 F. Supp. 1155 (D. Alaska 1978); *Wyoming v. Franke*, 58 F. Supp. 890 (D. Wyo. 1945).

In two companion D.C. Circuit cases, *Mountain States Legal Foundation v. Bush*, 306 F.3d 1132 (D.C. Cir. 2002), and *Tulare County v. Bush*, 306 F.3d 1138 (D.C. Cir. 2002), the court distinguished between

cases justiciable on the face of the proclamation and those cases requiring factual development. Notably, the D.C. Circuit is more deferential than other circuits; every other circuit to have considered the Antiquities Act has found presidential action to be more reviewable than has that court. Nonetheless, the district court broke new ground and found that President Biden's actions were unreviewable for lack of a waiver of sovereign immunity.

Substantial legal scholarship also contradicts the district court's finding of unreviewability. *See, e.g.,* Mark Squillace, *The Monumental Legacy of the Antiquities Act of 1906*, 37 Ga. L. Rev. 473, 534-36 (2003) (compiling numerous cases where courts reviewed presidential actions under the Antiquities Act); Bryan Mette, *A Monumental Task: How Should Courts Review Challenges to Presidential Actions Taken Pursuant to the Antiquities Act?* 104 Minn. L. Rev. 465, 467 (2019) (noting that courts have often reviewed presidential actions under the Antiquities Act but failed to settle on a consistent standard of review); Matthew W. Harrison, *Legislative Delegation and Presidential Authority: The Antiquities Act and the Grand Staircase-Escalante National Monument— A Call for a New Judicial Examination*, 13 J. Envtl. L. & Litig. 409, 409

(1998) ("Numerous federal courts have adjudicated the actions of governmental officials . . . . This type of review requires a court to examine the power delegated to a member of the executive branch, to review the propriety of a specific delegation, and to determine whether a governmental officer acted within the scope of authorized power.").

Chief Justice Roberts recently invited further judicial consideration of the scope of presidential power under the Antiquities Act. "The scope of the objects that can be designated under the Act, and how to measure the area necessary for their proper care and management, may warrant consideration." *Mass. Lobstermen's Ass'n v. Raimondo*, 141 S. Ct. 979, 980 (2021) (Roberts, C.J., statement respecting denial of cert.).

In sum, judges and scholars alike presume that a president's actions under the Antiquities Act will be reviewed in some manner. It's up to this Court to provide that review here.

## II.  President Biden's orders failed to set aside the smallest area.

By enacting the Antiquities Act in 1906, Congress hoped to curb "widespread defacement of Pueblo ruins in the American Southwest." *Id*. The Act provides that, in designating a national monument, the president must set aside "the smallest area compatible with the proper

care and management of the objects to be protected." 54 U.S.C. § 320301(b). Thus, the Act confers on presidents both power and constraint. "While the Executive enjoys far greater flexibility in setting aside a monument under the Antiquities Act, that flexibility, as mentioned, carries with it a *unique constraint*: Any land reserved under the Act must be limited to the smallest area compatible with the care and management of the objects to be protected." *Raimondo*, 141 S. Ct. at 981 (Roberts, C. J., statement respecting denial of cert.) (emphasis added).

Congress clarified that the "smallest area" meant "only so much land as may be absolutely necessary for the preservation of those *interesting relics* of prehistoric times." H.R. Rep. No. 2224, 59th Cong., 1st Sess. 1 (1906) (emphasis added). President Biden's actions do not come anywhere near designating the "smallest area compatible" with management: his designation covers 3.28 million acres, roughly equivalent to the size of the state of Connecticut.

When compared with both the language and purpose of the Act, that designation is ludicrous. The creators of the Antiquities Act never envisioned a Connecticut-sized land grab. *See, e.g.*, Squillace, *The Monumental Legacy of the Antiquities Act of 1906*, 37 Ga. L. Rev. at 477

(the Act "was designed to protect only very small tracts of land around archaeological sites"); Harrison, *Legislative Delegation and Presidential Authority*, 13 J. Envtl. L. & Litig. 413-14 (The Act's main purpose "was to protect specific items of antiquity, such as ruins, pottery, and picture graphs."). As Chief Justice Roberts pointed out, the Antiquities Act was initially enacted to protect indigenous Pueblo pottery and houses, but has been hijacked and "transformed into a power without any discernible limit to set aside vast and amorphous expanses of terrain." *Raimondo*, 141 S. Ct. at 981 (Roberts, C. J., statement respecting denial of cert.).

Never before has a president deemed an entire landscape an "object"—let alone set aside over three million acres to protect it.

## III. The district court's ruling needlessly implicates the nondelegation doctrine.

If President Biden's actions were somehow lawful under the Antiquities Act, then that law violates the nondelegation doctrine, which provides that "Congress generally cannot delegate its legislative power to another Branch." *Mistretta v. United States*, 488 U.S. 361, 372, (1989). With respect to federal lands, the Constitution provides that "Congress shall have Power to dispose of and make all needful Rules and Regulations respecting the Territory or other Property belonging to the

United States." U.S. Const., art. IV, § 3, cl. 2. This clause was enacted in response to English abuses by the king, who had nearly absolute power over the forests of England. *See* Michael W. McConnell, *The President Who Would Not Be King* 228 (2022).

The Property Clause's assignment of power over federal lands *to Congress* is especially relevant in western states, where the government owns significant land—65% of Utah, for example. And yet the district court found that Congress had delegated an awesome and apparently unreviewable power over those lands to the executive. In constitutional terms, the court's loosey-goosey reading of the Antiquities Act transferred the power to make all needful rules and regulations concerning federal property to the president. That creates a violation of the nondelegation doctrine if there ever was one.

Legal scholars agree that the Antiquities Act implicates the nondelegation doctrine. *See, e.g.*, Carol Hardy Vincent & Pamela Baldwin, *National Monuments: Issues and Background* 50 (2004) (acknowledging arguments that "the Antiquities Act is an unconstitutionally broad delegation of Congress' power, because the President's authority to create monuments is essentially limitless, since

all federal land has some historic or scientific value"); Janice Fried, *The Grand Staircase-Escalante National Monument: A Case Study in Western Land Management*, 17 Va. Envtl. L. J. 477, 515 (1998) (discussing claims that "the Antiquities Act was an unlawful delegation of congressional power to the executive branch").

The Supreme Court applies the avoidance canon regarding the delegation issue; it favors statutory interpretations that avoid open-ended grants of legislative power to the executive so it doesn't have to make a constitutional ruling. *See, e.g.*, *Mistretta*, 488 U.S. at 373, n. 7; *Indus. Union Dep't, AFL-CIO v. Am. Petroleum Inst.*, 448 U.S. 607, 646 (1980) (plurality). So too here: the Antiquities Act shouldn't be read to delegate unfettered power and thus raise nondelegation concerns.

## CONCLUSION

The district court erred in finding that president's actions under the Antiquities Act are unreviewable, so this Court should reverse.

Respectfully submitted,

November 6, 2023

Ilya Shapiro
Tim Rosenberger
MANHATTAN INSTITUTE
52 Vanderbilt Ave.
New York, NY 20017
(212) 599-7000
ishapiro@manhattan.institute

11

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) and Federal Rule of Appellate Procedure 29(a)(5) because it contains 2,115 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f), as determined by the word counting feature of the software (Microsoft Office 365) used to prepare this brief.

This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this brief has been prepared in a proportionally spaced typeface, 14-point Century Schoolbook.

Dated: November 6, 2023

*/s/ Ilya Shapiro*
Ilya Shapiro
Counsel for *Amici Curiae*


## CERTIFICATE OF SERVICE

I hereby certify that on November 6, 2023, I electronically filed the above with the Clerk of Court using the CM/ECF system which will send notification of this filing to counsel for all parties.

*/s/ Ilya Shapiro*
Ilya Shapiro
Counsel for *Amici Curiae*