No. 23-4106

# UNITED STATES COURT OF APPEALS FOR THE TENTH CIRCUIT

GARFIELD COUNTY, *et al.*,

*Plaintiffs-Appellants*,

v.

BIDEN, *et al.*,

*Defendants- Appellees.*

On Appeal from the United States District Court
for the District of Utah

4:22-CV-0059
The Honorable David Nuffer

## CORRECTED BRIEF FOR AMICI CURIAE IDAHO, ALASKA, INDIANA, IOWA, KANSAS, LOUISIANA, MISSISSIPPI, MONTANA, NEBRASKA, NORTH DAKOTA, OKLAHOMA, SOUTH CAROLINA, SOUTH DAKOTA, TEXAS, AND WYOMING SUPPORTING PLAINTIFFS-APPELLANTS AND REVERSAL

RAÚL R. LABRADOR
 *Attorney General*

JOSHUA N. TURNER
 *Acting Solicitor General*

Idaho Office of the
Attorney General
700 W. Jefferson St.
Suite 210
Boise, ID 83720
(208) 334-2400
josh.turner@ag.idaho.gov

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

INTERESTS OF *AMICI* STATES ........................................................................................ 1

ARGUMENT ....................................................................................................................... 2

   I. Separation of Powers Principles Demand—Not Disallow—Judicial Review Here ........................................................................................................ 2

   II. Presidents Lack Unfettered Power Under The Antiquities Act ................. 6

   III. The District Court's Errant Interpretation Harms *Amici* States ............. 9

CONCLUSION .................................................................................................................. 10

## TABLE OF AUTHORITIES

**CASES**

*Alderman v. United States*,
　394 U.S. 165 (1968) ............................................................................................3, 6

*Am. Forest Res. Council v. United States*,
　77 F.4th 787 (D.C. Cir. 2023) ....................................................................................9

*Citizens United v. Fed. Election Comm'n*,
　558 U.S. 310 (2010) ...................................................................................................3

*Comm. For Nuclear Resp., v. Seaborg*,
　463 F.2d 788 (D.C. Cir. 1971) ...............................................................................4, 6

*Dart v. United States*,
　848 F.2d 217 (D.C. Cir. 1988) ...................................................................................4

*E.O.H.C. v. Sec'y U.S. Dep't of Homeland Sec.*,
　950 F.3d 177 (3d Cir. 2020) .......................................................................................3

*Ex parte Young*,
　209 U.S. 123, (1908) ................................................................................................10

*FDIC v. Meyer*,
　510 U.S. 471 (1994) ...................................................................................................2

*Fleischmann Constr. Co. v. United States*,
　270 U.S. 349 (1926) ...................................................................................................8

*Kawananakoa v. Polyblank*,
　205 U.S. 349 (1907) ...................................................................................................2

*Larson v. Domestic and Foreign Com. Corp.*,
　337 U.S. 682 (1949) ...................................................................................................3

*Lindahl v. Off. Of Pers. Mgmt.*,
　470 U.S. 768 (1985) ...................................................................................................4

*Marbury v. Madison*,
　5 U.S. 137 (1803) .......................................................................................................5

*Mass. Lobstermen's Ass'n v. Raimondo*,
  141 S. Ct. 979 (2021) ..................................................................................5, 6

*Mass. Lobstermen's Ass'n v. Ross*,
  945 F.3d 535 (D.C. Cir. 2019) .........................................................................9

*Murphy Co. v. Biden*,
  65 F.4th 1122 (9th Cir. 2023) ..........................................................................9

*Nevada v. Hall*,
  440 U.S. 410 (1979) ....................................................................................2, 3

*Obduskey v. McCarthy & Holthus LLP*,
  139 S. Ct. 1029 (2019) .....................................................................................6

*Pearson v. Callahan*,
  555 U.S. 223 (2009) .........................................................................................5

*Simmat v. U.S. Bureau of Prisons*,
  413 F.3d 1225 (10th Cir. 2005) .......................................................................3

*Tenn. Valley Auth. V. Hill*,
  437 U.S. 153 (1978) ....................................................................................4, 6

*Tulare Cnty. V. Bush*,
  306 F.3d 1138 (D.C. Cir. 2002) .......................................................................9

*United States v. Games–Perez*,
  695 F.3d 1104 (10th Cir. 2012) .......................................................................9

**STATUES**

43 U.S.C. § 1701 ..................................................................................................8

43 U.S.C. § 1712 ..................................................................................................8

54 U.S.C. § 320301 ..........................................................................................7, 8

54 U.S.C. § 100101 ..............................................................................................8

**OTHER AUTHORITIES**

1 WILLIAM BLACKSTONE, COMMENTARIES 246 (Joseph Chitty ed. 1826) ....................... 2

Carol Vincent, CONG. RSCH. SERV., R41330, National Monuments and the Antiquities Act 8-9 (2023) ................................................................. 8

Charlotte Simmons et. Al., *Crisis in our National Parks : How Tourists are Loving Nature to Death*, THE GUARDIAN, https ://tinyurl.com/3cu4cdw2 (last visited Nov. 2, 2023) ............................................................................................. 10

*Idaho Rangeland Management and Grazing*, Bureau of Land Management, https://tinyurl.com/yc59x623 (last visited Nov. 2, 2023) ............................................. 9

**RULES**

Federal Rule of Appellate Procedure 29(a)(2) ............................................................. 1

## INTERESTS OF *AMICI* STATES

The federal government manages millions of acres of land within the boundaries of the several states. Congress by and large has statutorily directed the Executive branch regarding that land's management. With enactment of the Antiquities Act, Congress delegated power to the President to create national monuments. That delegation came with clear instructions regarding what the President can and cannot do. But the Act's clear limitations only have force if the judiciary enforces the law as Congress wrote it. The district court refused to do so, neglecting its essential function.

The States of Idaho, Alaska, Indiana, Iowa, Kansas, Louisiana, Mississippi, Montana, Nebraska, North Dakota, Oklahoma, South Carolina, South Dakota, Texas, and Wyoming (*Amici* States) are joint participants in our federalist system with vested interests in maintaining the balance struck by the Constitution. Key to that balance is a federal government subject to the rule of law, accountable for unlawful actions, and restrained by the separation of powers. The district court failed to faithfully apply those foundational principles. In this instance, that failure denied Utah any relief from the federal government's violations of law. Left uncorrected, the failure will only embolden future violations. And *Amici* States are just as susceptible to the federal overreach suffered by Utah here.

Accordingly, *Amici* States file this brief in support of Plaintiffs-Appellants under Federal Rule of Appellate Procedure 29(a)(2).

ARGUMENT

I. Separation of Powers Principles Demand—Not Disallow—Judicial Review Here.

The district court declined to address the parties' claims and stopped short of analyzing the text of the Antiquities Act. It believed that "without additional guidance from Congress or a higher court," the President and other federal defendants were entitled to sovereign immunity. Dkt. #180 at 18. And so it summarily rejected any exceptions to sovereign immunity, effectively rendering the Act judicially unreviewable. *See id.* at 13-19. But that is not how sovereign immunity nor judicial review operate.

Start with sovereign immunity. The federal government enjoys the same liability shield as any other sovereign, which means it is immune from suit unless it consents to be sued. *FDIC v. Meyer*, 510 U.S. 471, 475 (1994). This doctrine of immunity was passed on through the common law and rests "on the logical and practical ground that there can be no legal right as against the authority that makes the law on which the right depends." *Kawananakoa v. Polyblank*, 205 U.S. 349, 353 (1907). In other words, a sovereign cannot be made to answer in its own courts. *Nevada v. Hall*, 440 U.S. 410, 415 (1979).

But that does not mean that unlawful acts carried out by sovereign officials lack redressability. The English maxim that "the King can do no wrong" may have erected immunity under English law based on a belief that the King was "incapable of doing wrong" and "even of thinking wrong," *see* 1 WILLIAM BLACKSTONE, COMMENTARIES

2

246 (Joseph Chitty ed. 1826), but Americans have never accepted that fiction. *Hall*, 440 U.S. at 415. "It is a fundamental principle of our constitutional scheme that government, like the individual, is bound by the law." *Alderman v. United States*, 394 U.S. 165, 202 (1968). So "when government officials act beyond the limits of statutory authority," the law permits "suits for prospective relief" under the ultra vires doctrine. *Simmat v. U.S. Bureau of Prisons*, 413 F.3d 1225, 1232-33 (10th Cir. 2005).

That doctrine is an exception to sovereign immunity because our legal system is founded on the rule of law. "Under our Constitution it is We The People who are sovereign. The people have the final say. The legislators are their spokesmen." *Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 344 (2010). Law limits power, no matter the level of power. And thus, "where the officer's powers are limited by statute, his actions beyond those limitations are considered individual and not sovereign actions"—the law does not regard that officer as "doing the business which the sovereign has empowered him to do." *Larson v. Domestic and Foreign Com. Corp.*, 337 U.S. 682, 689 (1949). Because "[h]is actions are ultra vires his authority," he "may be made the object of specific relief." *Id.*

The district court gave the ultra vires exception an exceedingly narrow scope. *See* Dkt. #180 at 17-18. And to be sure, the exception's application should not swallow the rule. But the district court ignored "the presumption favoring judicial review of administrative action." *E.O.H.C. v. Sec'y U.S. Dep't of Homeland Sec.*, 950 F.3d 177, 191 (3d Cir. 2020). That presumption is strong, and "only upon a showing of 'clear and

3

convincing evidence' of a contrary legislative intent should the courts restrict access to judicial review." *Lindahl v. Off. of Pers. Mgmt.*, 470 U.S. 768, 778-79 (1985) (citation omitted). And the district court also failed to consider whether judicial review was barred completely, even if it may have been barred as to certain *factual* determinations by an official. *Id.* at 779-80. "Rarely, if ever, has Congress withdrawn courts' jurisdiction to correct" a government official's "lawless behavior." *Dart v. United States*, 848 F.2d 217, 224 (D.C. Cir. 1988). The district court got sovereign immunity wrong.

Now consider the separation of powers. A proper application of sovereign immunity and its exceptions reinforces the constitution's fundamental commitment to the separation of powers. But although the district court acknowledged the ultra vires exception, the court reduced it to a nullity. And its expansive application of sovereign immunity sabotages the separation of powers framework.

The Constitution created a tripartite system of government, and each branch must act within its defined and delegated functions. *Tenn. Valley Auth. v. Hill*, 437 U.S. 153, 194 (1978). Congress, and only Congress, may "formulate legislative policies." *Id.* Once Congress does so, "it is for the Executive to administer the laws and for the courts to enforce them when enforcement is sought." *Id.* "An essential ingredient of our rule of law is the authority of the courts to determine whether an executive official or agency has complied with the Constitution and with the mandates of Congress which define and limit the authority of the executive." *Comm. for Nuclear Resp., v. Seaborg*, 463 F.2d 788, 793 (D.C. Cir. 1971).

4

The district court seemed to confuse judicial restraint with judicial abdication. But from the beginning days of our Republic, it has been "emphatically the province and duty of the judicial department to say what the law is." *Marbury v. Madison*, 5 U.S. 137, 177 (1803). A court's refusal to say what the law is and enforce the law deprives Congress—and by extension the People—of the legislative power. And permitting the Executive branch to exceed the bounds of the law amounts to a transfer of the lawmaking power. The judiciary is the Constitution's referee that guards its genius form. Courts must therefore be willing to exercise their jurisdiction, which is a "virtually unflagging obligation." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2216 (2021).

Before turning to text of the Antiquities Act and its clear limits on Executive authority, a brief word is needed in response to the district court's concern over the lack of "guidance from Congress or a higher court." Dkt. #180 at 18. That concern sounds a lot like what a court might say in granting an official qualified immunity. Where an official acts in good faith and without the benefit of clearly established law, he won't be personally liable for money damages. *See Pearson v. Callahan*, 555 U.S. 223, 231 (2009). But there is no similar requirement for legal "guidance" before an official can be subject to suit for prospective relief. So it is unclear why the district court thought it relevant that "[n]o court of appeals has addressed how to interpret the Act's smallest area compatible requirement." Dkt. #180 at 18 (cleaned up). That interpretive void should have been a call to judicial duty, not a signal to retreat. *Marbury*, 5 U.S. at 177. When Congress legislates, courts "must enforce the statute that Congress enacted." *Obduskey*

*v. McCarthy & Holthus LLP*, 139 S. Ct. 1029, 1040 (2019).

This Court should give the ultra vires doctrine its proper scope and confirm the Constitution's "fundamental" separation of powers principles. *See Tenn. Valley Auth.*, 437 U.S. at 195. In our constitutional scheme, "[w]e do not subscribe to the totalitarian principle that the Government is the law, or that it may disregard the law." *Alderman*, 394 U.S. at 202. "Any claim to executive absolutism cannot override the duty of the court to assure that an official has not exceeded his charter or flouted the legislative will." *Seaborg*, 463 F.2d at 793. When laws are transgressed, courts must see to their enforcement. That is, after all, the nature of judicial power.

## II.     Presidents Lack Unfettered Power Under The Antiquities Act.

The text of the Antiquities Act confirms that courts play an important role in its enforcement. Congress placed clear, judicially cognizable limits on Executive power in the Act. The district court's refusal to give real-world meaning to those limits leaves key portions of the statute unenforceable.

In 1906, Congress passed the Antiquities Act "as a response to widespread defacement of Pueblo ruins in the American Southwest." *Mass. Lobstermen's Ass'n v. Raimondo*, 141 S. Ct. 979, 980 (2021) (Roberts, C.J., respecting the denial of certiorari). To address that problem, the Act created "a mechanism for the preservation of prehistoric antiquities in the United States." *Id.* (quotation and citation omitted).

The President carries out the statute's mission. He is authorized to "declare by public proclamation historic landmarks, historic and prehistoric structures, and other

6

objects of historic or scientific interest that are situated on land owned or controlled by the Federal Government to be national monuments." 54 U.S.C. § 320301(a). He may also "reserve parcels of land as a part of the national monuments"—doing so limits the use of land surrounding the monument to ensure its protection. *Id.* § 320301(b). But Congress did not give the President discretion to reserve "parcels of land" of any size. Congress instead imposed a limit directly on its delegation to the President: "The limits of the parcels shall be confined to the smallest area compatible with the proper care and management of the objects to be protected." *Id.*

Land under the Antiquities Act plays a supporting role. It is not one of "the objects" of the Act's protections. *Id.* The President has discretion regarding which "landmarks, historic and prehistoric structures, and other objects of historic or scientific interest" to designate as national monuments. *Id.* § 320301(a). But his discretion as to monument designation is replaced with definite limits when it comes to land reservation. *Id.* § 320301(b). The President's proclamations regarding Bears Ears and Grand Staircase exceed the Act's protective mechanism. The proclamations do not identify "landmarks," "structures," or "objects" of particular historical or scientific value but instead raise the land from a supporting status to primacy.

The district court mistakenly thought it could not review whether the land reservations were "confined to the smallest area compatible with the proper care and management of the objects." For example, it reasoned that because Plaintiffs did not dispute that the President could designate an "object" as a national monument, then

7

Plaintiffs' challenges to "land" reservations amounted to a charge of misuse of authority rather than lack of authority. But that simply does not follow, and it blends the Act's distinctions between object designation and land reservation. The former comes with delegated discretion, but the latter has congressional limitations.

Consider subsection (d), in which Congress provides that "[n]o extension or establishment of national monuments in Wyoming may be undertaken except by express authorization of Congress." *Id.* § 320301(d). Under the district court's reasoning, Wyoming would be unable to judicially challenge a presidential designation of a national monument in its borders so long as Wyoming accepted that national monuments may be designated in other states. Dismissal of such a claim on those grounds would be absurd. So too here. The land reservation limitation in subsection (b) is no less cognizable than the Wyoming limitation in subsection (d).

The district court's interpretation also leads to other absurd results, which should be avoided. *See Fleischmann Constr. Co. v. United States*, 270 U.S. 349, 360 (1926). For instance, a national park can be established only by an Act of Congress. *See* 54 U.S.C. § 100101 *et seq.* But under the district court's read, the President need not bother seeking congressional approval of a national park because he can unilaterally reserve whatever millions of acres he wants under the Antiquities Act. And the Federal Land Policy and Management Act would largely be frustrated if the President can circumvent its principles of multiple use management through expansive land reservations under the Antiquities Act. *See* 43 U.S.C. §§ 1701, 1712; Carol Vincent, Cong. Rsch. Serv.,

R41330, National Monuments and the Antiquities Act 8-9 (2023) (explaining how land reserved under the Antiquities Act limits recreational, commercial, and agricultural uses of that land). Surely Congress did not intend for the Antiquities Act to empower the President to bypass other restrictions on federal land use.

It is unsurprising, then, that other courts "have consistently reviewed claims challenging national monument designations." *Am. Forest Res. Council v. United States*, 77 F.4th 787, 797 (D.C. Cir. 2023); *see also Murphy Co. v. Biden*, 65 F.4th 1122, 1131 (9th Cir. 2023); *Mass. Lobstermen's Ass'n v. Ross*, 945 F.3d 535, 540 (D.C. Cir. 2019); *Tulare Cnty. v. Bush*, 306 F.3d 1138 (D.C. Cir. 2002). The district court's decision invites this Court to create a circuit split with at least the Ninth Circuit and District of Columbia Circuit. But this Court has "been loath to create a split where none exists," and it should not do so here. *United States v. Games–Perez*, 695 F.3d 1104, 1115 (10th Cir. 2012).

### III. The District Court's Errant Interpretation Harms *Amici* States.

In closing, *Amici* States highlight several ways the district court's decision risks harming them. First, the Antiquities Act's "smallest area compatible" limitation is a direct benefit to states. It protects the multiple-use regime that dominates federal lands and encourages their productive use. For example, in Idaho alone, ranchers utilize more than 11,500,000 acres for grazing.[1] Idaho's ranching industry depends on the availability of those grazing allotments. Similarly, oil and gas leases on federal lands in states like

---

[1] *Idaho Rangeland Management and Grazing*, Bureau of Land Management, https://tinyurl.com/yc59x623 (last visited Nov. 2, 2023).

9

Kansas, Montana, and Oklahoma support domestic energy production and local economies. But the district court's reasoning renders the Act's limitation unenforceable and jeopardizes state interests built around the multiple-use principle.

Second, dramatic expansion of locked down land that cannot be productively used inevitably leads to mismanagement or undermanagement of that land. The federal government is already experiencing a crisis in preserving, managing, and maintaining national parks.[2] Much more land and the Department of the Interior will hit a tipping point. And the inability to manage land properly increases risks of wildfires and damage to sites meaningful to states and their citizens.

Third, as discussed above, important separation of powers principles require judicial review of unlawful executive action. And to the extent that review is unduly circumscribed, states will suffer, as Utah is here. Moreover, *Amici* State officials are not immune from suit when they engage in unlawful actions. *Ex parte Young*, 209 U.S. 123, (1908). Federal officials shouldn't be either.

## CONCLUSION

For the reasons stated, this Court should reverse the decision below.

---

[2] Charlotte Simmons et. al., *Crisis in our National Parks: How Tourists are Loving Nature to Death*, THE GUARDIAN, https://tinyurl.com/3cu4cdw2 (last visited Nov. 2, 2023).

Respectfully Submitted,

RAÚL R. LABRADOR
*Attorney General*

Date: November 7, 2023

/s/ *Joshua N. Turner*
Joshua N. Turner
*Acting Solicitor General*
Idaho Attorney General's Office
Statehouse, Room 210
Boise, ID 83720

**ADDITIONAL STATE SIGNATORIES**

<div style="columns:2">

TREG R. TAYLOR
Attorney General
*State of Alaska*

THEODORE E. ROKITA
Attorney General
*State of Indiana*

BRENNA BIRD
Attorney General
*State of Iowa*

KRIS W. KOBACH
Attorney General
*State of Kansas*

JEFF LANDRY
Attorney General
*State of Louisiana*

LYNN FITCH
Attorney General
*State of Mississippi*

AUSTIN KNUDSEN
Attorney General
*State of Montana*

MICHAEL T. HILGERS
Attorney General
*State of Nebraska*

DREW H. WRIGLEY
Attorney General
*State of North Dakota*

GENTNER F. DRUMMOND
Attorney General
*State of Oklahoma*

ALAN WILSON
Attorney General
*State of South Carolina*

MARTY JACKLEY
Attorney General
*State of South Dakota*

KEN PAXTON
Attorney General
*State of Texas*

BRIDGET HILL
Attorney General
*State of Wyoming*

</div>

## CERTIFICATE OF COMPLIANCE FOR BRIEFS

This brief complies with Rule 29(a)(5) because it contains 2,588 words, excluding the parts that can be excluded. The brief also complies with Rule 32(a)(5) and (6) because it is prepared in a proportionally spaced typeface using Microsoft Word 2016 in 14-point Garamond font.

Date: November 7, 2023                     /s/ *Joshua N. Turner*
                                           Joshua N. Turner

## CERTIFICATE OF DIGITAL SUBMISSION

With respect to this brief, all required privacy redactions have been made; the hard copies submitted to the clear are exact copies of the ECF submission; the digital submission has been scanned for viruses with the most recent version of a commercial virus scanning program, SentinelOne, and according to the program is free of viruses.

Date: November 7, 2023                     /s/ *Joshua N. Turner*
                                           Joshua N. Turner

## CERTIFICATE OF SERVICE

I hereby certify that on November 7, 2023, I electronically filed the foregoing using the CM/ECF system which will send notification of such filing to everyone requiring notice.

Date: November 7, 2023                     /s/ *Joshua N. Turner*
                                           Joshua N. Turner